Helene T. Krasnoff
Planned Parenthood Federation of America
1780 Massachusetts Avenue, N.W.
Washington, DC  20036
Telephone:  (202) 973-4800

Roger K. Evans
Dara Klassel
Eve C. Gartner
Planned Parenthood Federation of America
810 Seventh Avenue
New York, NY  10019
Telephone:  (212) 261-4708

B. Newal Squyres
HOLLAND & HART LLP
Suite 1400, U. S. Bank Plaza
101 South Capitol Boulevard
Post Office Box 2527
Boise, Idaho  83701
Telephone:  (208) 342-5000

Of Counsel:
Louise Melling
Jennifer Dalven
Reproductive Freedom Project
American Civil Liberties Union
125 Broad Street
New York, NY  10004
Telephone:  (212) 549-2637

U.S. COURTS

00 NOV 28  PM 4:49

CAMERON S. BURKE
CLERK
IDAHO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF IDAHO, INC. and GLENN H. WEYHRICH, M.D., <br><br>Plaintiffs,<br><br>v.<br><br>ALAN G. LANCE, Attorney General of the State of Idaho, and GREG BOWER, Ada County Prosecuting Attorney,<br><br>Defendants. | Case No.  CV00-0353-S-MHW<br><br>**FIRST AMENDED COMPLAINT** |

## I. PRELIMINARY STATEMENT

1. This action is brought pursuant to 42 U.S.C. § 1983 to enjoin the enforcement of 2000 Idaho Senate Bill No. 1299, amending Idaho's abortion laws to require a women to show "positive identification" before obtaining an abortion and to require parental consent before a minor may obtain an abortion. See 2000 Idaho Senate Bill No. 1299, amending Chapter 6, Title 18 of the Idaho Code to add new sections 18-609A and 18-614 and adopted by the Idaho Legislature in February, 2000 ("the Act") (A copy of the Act was attached to the Complaint as Exhibit A). The Act was scheduled to take effect July 1, 2000. Portions of the Act have been enjoined by an order of this Court dated September 1, 2000.

2. The Act violates the rights of plaintiffs' patients as guaranteed by the fourteenth amendment to the United States Constitution by requiring every woman, before she can obtain an abortion, to present "positive identification." If a woman does not have one of the forms of identification required by the Act, she will be forced to acquire and present a certified copy of her birth certificate before being able to obtain an abortion. This process will increase the health risks and costs associated with abortion by forcing women to delay terminating their pregnancies. For women unable to obtain the certified birth certificate or one of the other state-mandated forms of identification, access to abortion is denied.

3. The Act violates the rights of plaintiffs' minor patients as guaranteed by the fourteenth amendment to the United States Constitution by requiring that a physician

obtain parental consent before performing an abortion on the minor without providing an adequate mechanism to bypass the consent requirement. The bypass is inadequate because it fails to assure that the minor has appropriate access to a confidential and expeditious bypass proceeding with the assistance of legal counsel. The bypass is also ineffective because it requires that minors seeking bypasses trigger criminal investigations relating to their conduct. Further, there is no procedure in place to assure that minors will be able to procure an effective bypass proceeding.

4. The Act's restrictive medical emergency provisions also violate the rights of plaintiffs and their minor patients as guaranteed by fourteenth amendment to the United States Constitution by failing to make clear and adequate provision for abortions when the woman's health is at risk. The medical emergency provisions of the Act further violate the due process rights of plaintiffs' minor patients by requiring post-procedure notification of a parent. This will deter minors who need emergency abortions from seeking them. These provisions also violate the plaintiff providers' due process rights by exposing them to liability based on an objective standard. These deficiencies will have the effect of making physicians reluctant to provide abortions in emergency situations or to delay performing the abortion until after the minor has secured parental consent or a court order, thereby jeopardizing the woman's health.

5. By requiring minors to waive their fifth amendment rights as a condition of exercising their constitutional right to seek a judicial bypass of the parental consent

FIRST AMENDED COMPLAINT - 3

requirement, the Act also violates the rights of plaintiffs' minor patients as guaranteed by the fifth and fourteenth amendments to the United States Constitution.

6. If it goes into effect, the Act will cause immediate and irreparable harm to the women of Idaho seeking abortions and to Idaho's abortion providers.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because plaintiffs and defendants reside in the District of Idaho.

## III. THE PARTIES

9. Plaintiff, Planned Parenthood of Idaho, Inc. ("Planned Parenthood") is a not-for-profit corporation organized under the laws of Idaho and located in Boise. Planned Parenthood provides medical and educational services to women and men. Planned Parenthood's services include pregnancy diagnosis and counseling, contraceptive counseling, provision of all methods of birth control, HIV/AIDS testing and counseling, treatment of minor sexually transmitted infections and uncomplicated urinary tract infections, and cancer screening. Planned Parenthood does not perform abortion services, but provides its patients with referrals to providers of those services. Planned Parenthood sues on behalf of its patients.

10. Plaintiff, Glenn H. Weyhrich, M.D., is a physician licensed to practice medicine in the State of Idaho, and is a board-certified obstetrician and gynecologist who maintains a private ob/gyn practice in Boise. Dr. Weyhrich provides an array of medical

FIRST AMENDED COMPLAINT - 4

services, including abortions through the sixteenth week of pregnancy as measured from the first day of the woman's last menstrual period ("LMP"). His patients seeking abortions come predominantly from the Boise area, but he also performs abortions on women from all regions of Idaho and a few surrounding states including Nevada and Oregon. Among Dr. Weyhrich's patients seeking abortions, fewer than 10 percent are women under the age of 18. Of these women, an overwhelming majority decide on their own to involve a parent or legal guardian in their decision to obtain an abortion, often bringing that person with them when they get the procedure. Dr. Weyhrich also has minor patients who are mature and/or who he believes would be harmed by a requirement to involve a parent. Dr. Weyhrich sues on his behalf and on behalf of his patients seeking abortions.

11. Defendant Alan G. Lance is the Attorney General of the State of Idaho. He is the chief legal officer for the state and is charged by law with enforcement of the Act, supervision of all county attorneys and defense of the constitutionality of the laws of Idaho. Defendant Lance, whose office is in Boise, is sued in his official capacity, as are his agents and successors in office.

12. Defendant Greg Bower is the Ada County Prosecuting Attorney. He is charged by law with enforcement of the Act. He is sued in his official capacity, as are his agents and successors in office.

## IV. STATUTORY FRAMEWORK

### A. Positive Identification

13. The Act provides in relevant part that:

> No person may cause or perform an abortion otherwise permitted pursuant to Idaho law until the physician either confirms the age of the woman by positive identification or secures legal consent pursuant to 18-609A, Idaho Code.

Idaho Code § 18-614(1). The Act defines "positive identification" as "a lawfully issued state, district, territorial, possession, provincial, national or other equivalent government driver's license, identification card or military card, bearing the person's photograph and date of birth, or the person's valid passport, or certified copy of the person's own birth certificate." Idaho Code § 18-614(2). The Act does not make any provisions for performing an abortion if a woman is unable to present one of the forms of positive identification enumerated in the Act.

### B. Parental Consent

14. The Act also provides in relevant part that:

> No person shall knowingly cause or perform an abortion upon a minor unless . . . [t]he attending physician has secured the written informed consent of the minor and the written informed consent of the minor's parent.

Idaho Code § 18-609A(1)(a). The parental consent requirement is waived if the minor is emancipated and the attending physician has received written proof of emancipation; the minor is found by a court to be mature, of sound mind and having sufficient intellectual capacity to consent to the abortion for herself (as described in Idaho Code § 18-

FIRST AMENDED COMPLAINT - 6

609A(1)(b)); or a court has found that causing or performing the abortion is in the best interests of the minor and issued an order granting permission for the abortion (as described in Idaho Code § 18-609A(1)(b)). Idaho Code § 18-609A(1)(a)(ii) – (iv). The Act also waives the parental consent requirement before an abortion when there is a medical emergency; however, the physician must immediately notify a parent after the procedure. Idaho Code § 18-609A(1)(a)(v).

### 1. Judicial Bypass

15. Subsection (1)(b) of Idaho Code § 18-609A purports to provide for a proceeding by which a court may grant an order allowing a minor who is determined to have sufficient maturity to "self-consent" to the abortion or giving judicial consent to the abortion because it is in her best interests. The Act requires that the minor file a petition under this subsection in the judicial district where the minor resides. Idaho Code § 18-609A(1)(b)(i). The petition must include "[t]he name and address of each parent, guardian, or, if the minor's parents are deceased or the minor is abandoned and no guardian ad litem has been appointed, the name and address of any other person standing in loco parentis of the minor." Idaho Code § 18-609A(1)(b)(ii).

16. The Act provides that a guardian ad litem may assist the minor in preparing the petition, but only requires that the court "shall ensure that the minor is given assistance in filing the petition if the minor so desires a guardian ad litem but no qualified guardian ad litem is available." Idaho Code § 18-609A(1)(b)(i). If a minor requests a guardian ad litem and none is available, "the court may appoint some other person to act

FIRST AMENDED COMPLAINT - 7

in the capacity of a guardian ad litem." Idaho Code § 18-609A(1)(b)(iii). There is no provision in the Act that guarantees the minor the right to counsel.

17. The Act requires that a hearing on the merits of the minor's petition be held no later than five days from the filing of the petition and that the court enter an order no later than five days after the conclusion of the hearing. Idaho Code § 18-609A(1)(b)(iii), (iv). A notice of appeal from an order issued by the court must be filed within two days of the issuance of the order. Idaho Code § 18-609A(1)(c). The record on appeal must be completed and the appeal must be perfected by no later than five days from the filing of notice of appeal. Id. The Act also provides, however, that "[e]xcept for the time for filing a notice of appeal, a court may enlarge the times set forth pursuant to this subsection upon the request of the minor or upon other good cause appearing." Idaho Code § 18-609A(1)(d). The Act states that appeals pursuant to this subsection "shall receive expedited appellate review," but does not provide any specific time limits within which the appeal must be resolved. See Idaho Code § 18-609A(1)(c).

18. The Act requires that "[i]f, in hearing the petition, the court becomes aware of allegations which, if true, would constitute a violation of any section of title 18, Idaho Code ... the court shall order, upon entry of final judgment in the proceeding under this subsection, that an appropriate investigation be initiated or an appropriate information, complaint or petition be filed." Idaho Code § 18-609A(1)(b)(iv). The Act states that "[s]uch allegations shall be forwarded by the court with due consideration for the confidentiality of the proceedings under this section." Id.

19. The Act states that "[a]ll records contained in court files of judicial [bypass] proceedings ... shall be confidential and exempt from disclosure pursuant to section 9-340G, Idaho Code." Idaho Code § 18-609A(1)(g). The Act further provides that "[d]ockets and other court records shall be maintained and court proceedings undertaken so that the names of the parties to actions brought ... will not be disclosed to the public." Id. The Act states that a hearing on a minor's bypass petition "shall be heard by a district judge on the record in a closed session of the court." There is no similar provision with respect to the appeal of a denial of a bypass petition.

### 2. Medical Emergency Exception

20. The Act provides in relevant part that:

> No person shall knowingly cause or perform an abortion upon a minor unless . . . [a] medical emergency exists for the minor so urgent that there is insufficient time for the physician to obtain the informed consent of a parent or a court order and the attending physician certifies such in the pregnant minor's medical records.

Idaho Code § 18-609A(1)(a)(v).

21. The Act defines "medical emergency" as:

> [A] sudden and unexpected physical condition which, in the reasonable medical judgment of any ordinarily prudent physician acting under the circumstances and conditions then existing, is abnormal and so complicates the medical condition of the pregnant minor as to necessitate the immediate causing or performing of an abortion: 1. To prevent her death; or 2. Because a delay in causing or performing an abortion will create serious risk of immediate, substantial and irreversible impairment of a major physical bodily function of the patient.

Idaho Code § 18-609A(5)(c)(i). The Act specifies that a "medical emergency" does not include "[a]ny physical condition that would be expected to occur in normal pregnancies of women of similar age, physical condition and gestation" or "[a]ny condition that is predominantly psychological or psychiatric in nature." Idaho Code § 18-609A(5)(c)(ii). This definition fails to encompass emergency abortions necessary as a result of a woman's physical condition that is not "sudden or unexpected" or emergency abortions necessary to prevent non-immediate or reversible bodily damage; damage to non-bodily, i.e., mental, health; and damage to minor physical bodily functions.

22. The Act requires that immediately after an abortion performed in the case of medical emergency, the physician "attempt to provide a parent of an unemancipated minor actual notice of the medical emergency." Idaho Code § 18-609A(1)(A)(v). If a parent cannot be "immediately contacted" for actual notification, the physician must "with due diligence, attempt to provide actual notification to a parent for an eight hour period" following the abortion. Id. Notwithstanding those requirements, a physician who performs an abortion on a minor in the case of medical emergency must provide actual notification to a parent within twenty-four hours of the procedure by one of several means set forth in the Act. See id. The Act makes no provision for waiver of the actual notification requirement unless a physician believes that the minor is homeless or abandoned or that her physical safety would be jeopardized by parental notification, in which case, the physician is required to make a report to a law enforcement agency. Idaho Code § 18-609A(1)(a)(v).

FIRST AMENDED COMPLAINT - 10

### C.  Penalties

23. The Act provides that any person who is injured by the performing of an abortion on a minor in violation of the Act "shall have a private right of action to recover all damages sustained as a result of such violation, including reasonable attorney's fees if judgment is rendered in favor of plaintiff." Idaho Code § 18-609A(3). In addition, the Act may impose criminal penalties of $5000 and up to five years in prison upon the physician, his accomplices and accessories, and any woman who "knowingly submits" to the abortion. See Idaho Code §§ 18-605, 18-606.

24. The Act, by its terms, is to take effect July 1, 2000. See The Act, Section 10.

## V.  STATEMENT OF FACTS

25. According to the Idaho Department of Health and Welfare's Center for Vital Statistics and Health Policy, there were 888 induced abortions performed in the state of Idaho in 1998. Upon information and belief, a similar number of procedures were performed in 1999 and will be performed in 2000 absent enforcement of the Act.

26. Abortions are only rarely performed in Idaho after 16 weeks LMP. Of the abortions performed in 1998, only fifteen were performed after 16 weeks LMP, and of those fifteen, only 5 were performed from 20 weeks LMP on. Generally, if a woman in Idaho is seeking to terminate her pregnancy after 16 weeks LMP, she must travel to another state to obtain an abortion.

27. The risks associated with childbirth are 22 times the risks associated with an abortion at twelve weeks or earlier and twice the risk of abortion after twelve weeks.

At no time before 21 weeks do the risks of abortion exceed those incurred with childbirth.

28. Although abortion through the 21st week of pregnancy is significantly safer than pregnancy and childbirth, delay of any length in performing an abortion increases the risk to the woman seeking to obtain the abortion. The increase in risk becomes statistically significant when delay reaches one week. Delays of any length may be sufficient to prolong a woman's pregnancy into the second trimester, thereby significantly increasing the cost, inconvenience and risk associated with the procedure.

A. **Positive Identification**

29. Among plaintiffs' patients are women who do not have "positive identification" as defined in the Act.

30. To obtain a valid United States passport for the first time, the applicant must appear in person and provide a public record showing the date and place of birth, and created within the first five years of life. According to the United States Department of State, the normal processing time for an application for a passport is 25 business days.

31. A certified copy of a birth certificate is a prerequisite to issuance of an Idaho driver's license or state ID card.

32. Therefore, if a woman did not have one of the forms of "positive identification" required by the Idaho statute, she would need to obtain a certified copy of her birth certificate to have an abortion. Obtaining a certified copy of a birth certificate will impose substantial delays upon the woman, subjecting her to increased risks and

costs associated with the abortion. All women cannot satisfy the "positive identification" requirement will experience delays in trying to obtain the necessary identification, but this delay will be particularly acute for women who were not born in Idaho. For some women, the "positive identification" requirement will operate as an absolute bar to obtaining an abortion.

### B. Parental Consent

33. Of the Idaho residents who obtained abortions in 1998, approximately 9 percent of them were women under the age of 18. Upon information and belief, a similar percentage of the abortions performed in 1999 were obtained by minors and will be performed in 2000 absent enforcement of the Act. These figures do not include minors from other states who obtained abortions in Idaho to whom the Act also applies.

34. When a minor does not involve a parent in her decision to terminate her pregnancy, she generally has compelling reasons. Such reasons include fear of physical violence against the minor or other family members; of being forced to leave home; of being forced to carry an unwanted pregnancy to term; or other punishment of the minor; or of causing other problems between the minor and one parent or both parents or between the minor's parents. In addition, parents may refuse consent for an abortion, thus vetoing the minor's decision.

35. Nationally, seventeen percent of teenagers who undergo abortions obtain them after twelve weeks LMP. Even without parental consent requirements like those set forth in the Act, minors already tend to seek abortions later in pregnancy than adults

FIRST AMENDED COMPLAINT - 13

due to delays in discovering their pregnancies, fear of telling their parents or partner that they are pregnant, or difficulty in deciding how to resolve their pregnancy. The delay will often be compounded by scheduling difficulties resulting from the limited hours when clinics are open, the limited hours when physicians are available to perform abortions, transportation requirements, the minor's work and/or school commitments, and the parent's family or work obligations.

36. The Act's venue restriction, which requires that the minor file her petition in the judicial district where she resides, unduly constrains a minor's ability to obtain a confidential and expeditious bypass because, among other things: it hinders her ability to seek the bypass in an area where she can avoid seeing someone she knows; it separates her from resources in other districts that may be available to assist her in the judicial bypass process; and it denies her the flexibility she needs to procure the bypass as quickly as possible.

37. The Act's timeframes for the district court to hear and rule on a minor's bypass petition, the ability of judges to extend those timeframes for "good cause," and the lack of any time limit within which appeals must be resolved will prevent some minors from obtaining abortions.

38. The Act's requirement that a minor file a notice of appeal within two days of the issuance of the district court's order denying her bypass petition will prevent some minors from obtaining abortions.

FIRST AMENDED COMPLAINT - 14

39. Minors have confidentiality concerns, and the Act fails to assure a minor that a bypass hearing and any appeals that follow will be conducted in a way that satisfactorily preserves her confidentiality. The provisions of the Act relating to court records and dockets do not adequately protect the identity of the minor. Moreover, the Act contains no provision to guarantee the confidentiality of the appeal of a denial of a bypass petition, including any hearing on such an appeal.

40. The Act's failure to guarantee that all minors seeking a judicial bypass are offered and may obtain the assistance of a lawyer deprives minors of the opportunity to seek an effective bypass.

41. The Act requires that, as a condition of exercising their constitutional right to seek a judicial bypass, minors trigger, at a minimum, criminal investigations relating to their conduct. Under these circumstances, a minor is deprived of the ability to obtain an effective and confidential bypass.

42. There are urgent medical situations that necessitate an immediate abortion. In these situations, delay of a couple of weeks or even a few days could place the health – or even the life – of the woman in jeopardy.

43. Without knowing precisely how long the district and appellate courts will take to hear and rule on a minor's bypass petition, a doctor will, in some circumstances, be unable to certify with any degree of certainty that there is insufficient time to obtain a court order prior to performing an abortion necessary to preserve a woman's health or life.

FIRST AMENDED COMPLAINT - 15

44. Some women have chronic medical conditions, such as kidney or heart disease, that will cause the woman to need an abortion on an emergency basis although her physician originally believed that she would be able to carry a pregnancy to term. Depending on how far her condition has deteriorated, requiring a woman in this situation to wait to have an abortion poses serious risks to her health and, potentially, her life.

45. Some minors needing emergency abortions, like other minors, have compelling reasons for not involving a parent in their decisions to have abortions and/or are sufficiently mature to make those decisions without parental involvement.

## CLAIMS FOR RELIEF

### COUNT I - RIGHT TO DUE PROCESS OF LAW

46. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-45 above as if set forth fully herein.

47. The Act violates the rights of plaintiffs' patients to privacy as guaranteed by the fourteenth amendment to the United States Constitution by imposing an undue burden on women seeking an abortion by requiring every woman, before she can obtain an abortion, to present "positive identification." This requirement thwarts the rights of the women of Idaho by imposing a substantial obstacle in their path when seeking abortion and by limiting their access to abortion without a corresponding state interest sufficiently weighty to justify this limitation.

## COUNT II - RIGHT TO DUE PROCESS OF LAW

48. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-47 above as if set forth fully herein.

49. The Act violates the rights of plaintiffs' patients to privacy as guaranteed by the fourteenth amendment to the United States Constitution in, including but not limited to, the following ways:

    a) by failing to provide an adequate judicial bypass to parental consent;

    b) by failing to make adequate provision for abortion in any case where the woman's health is at risk; and

    c) by requiring parental notification in the case of a medical emergency.

## COUNT III - RIGHT NOT TO SELF-INCRIMINATE

50. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-49 above as if set forth fully herein.

51. By requiring minors to waive their fifth amendment rights as a condition of exercising their constitutional right to seek a judicial bypass, the Acts violates the rights of plaintiffs' minor patients as guaranteed by the fifth and fourteenth amendments to the United States Constitution.

## COUNT IV - RIGHT TO DUE PROCESS OF LAW

52. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-51 above as if set forth fully herein.

53. The Act violates the rights of plaintiff providers to due process as guaranteed by the fourteenth amendment to the United States Constitution because,

among other things, it utilizes an objective standard in imposing liability under the "medical emergency" provisions and is void for vagueness by failing to give adequate notice of what constitutes a "medical emergency" within the meaning of the Act and by failing to give adequate notice of what is "insufficient time for the physician to obtain ... a court order."

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

1. Issue a declaratory judgment that the 2000 Idaho Senate Bill No. 1299, amending Chapter 6, Title 18 of the Idaho Code to add new sections 18-609A and 18-614 and adopted by the Idaho Legislature in February, 2000, violates the rights of plaintiffs and their patients as protected by the fifth and fourteenth amendments to the United States Constitution and is therefore void and of no effect;

2. Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation and execution of 2000 Idaho Senate Bill No. 1299, amending Chapter 6, Title 18 of the Idaho Code to add new sections 18-609A and 18-614 and adopted by the Idaho Legislature in February, 2000, by enjoining defendants, their agents, employees, appointees or successors from enforcing, threatening to enforce or otherwise applying the provisions of that Act;

3. Grant plaintiffs attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

4. Grant such further relief as this Court deems just and proper.

Dated: November 28, 2000.

Respectfully submitted,

_____
B. Newal Squyres
Cooperating Counsel for American Civil
 Liberties Union of Idaho Foundation
P. O. Box 2527
Boise, ID 83701-2527
(208) 342-5000

Helene T. Krasnoff
Planned Parenthood Federation of America
1780 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 973-4800

Roger K. Evans
Dara Klassel
Eve C. Gartner
Planned Parenthood Federation of America
810 Seventh Avenue
New York, NY 10019
(212) 261-4708

Attorneys for Plaintiffs

Of Counsel:

Louise Melling
Jennifer Dalven
Reproductive Freedom Project
American Civil Liberties Union
125 Broad Street
New York, NY 10004
(212) 549-2637

FIRST AMENDED COMPLAINT - 19

## CERTIFICATE OF SERVICE

I hereby certify that on this _28th_ day of November 2000, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

Alan G. Lance, Esq.  
Office of the Attorney General  
Clinton E. Minor  
David W. Lloyd  
Civil Litigation Division  
Len B. Jordan Building  
650 W. State Street  
    Boise, ID  83720  
Fax: (208) 334-2830

- [ ] U.S. Mail
- [x] Hand Delivered
- [ ] Overnight Mail
- [ ] Telecopy (Fax)

Richard A. Hearn, ISB No. 5574  
RACINE, OLSON, NYE, BUDGE  
    & BAILEY, CHARTERED  
201 East Center  
P. O. Box 1391  
Pocatello, ID  83201  
Fax: (208)-232-6109

- [x] U.S. Mail
- [ ] Hand Delivered
- [ ] Overnight Mail
- [ ] Telecopy (Fax)

William T. Sali  
Attorney for *amicus curiae*  
Idaho Family Defense Fund, Inc.,  
    on behalf of Idaho Chooses Life  
    Alliance, Inc.  
P. O. Box 71  
Kuna, ID  83634  
Fax: (208) 376-4404

- [x] U.S. Mail
- [ ] Hand Delivered
- [ ] Overnight Mail
- [ ] Telecopy (Fax)

_____  
B. Newal Squyres

2736067_1.DOC

FIRST AMENDED COMPLAINT - 20