

U.S. COURTS

2001 DEC 20  A 11: 22

REC'D _____ FILED _____
CAMDEN S. PLUKE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF IDAHO, INC., and GLENN H. WEYHRICH, M.D., | ) ) ) |
| Plaintiffs, | ) CASE NO. CIV 00-0353-S-MHW ) |
| v. | ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| ALAN G. LANCE, Attorney General of the State of Idaho, and GREG BOWER, Ada County Prosecuting Attorney, | ) ) ) ) |
| Defendants. | ) ) |

**I.**

**INTRODUCTION.**

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and seek a declaratory judgment

that certain statutes regulating abortions upon minors in Idaho are unconstitutional[1] (hereinafter

"Idaho's parental consent law" or "Idaho's law").  Idaho's parental consent law became effective

July 1, 2000.

---

[1]       *See* Idaho Code § 18-601 *et seq.*; 2000 Idaho Senate Bill No. 1299, amending
Chapter 6, Title 18 of the Idaho Code to add new sections 18-609A and 18-614 and adopted by
the Idaho Legislature in February 2000; 2001 Idaho House Bill No. 340, amending Chapter 6,
Title 18 of the Idaho Code, §§ 18-605, 18-609A and 18-614 and adopted by the Idaho Legislature
in March 2001.

Plaintiffs in this case are Planned Parenthood of Idaho, Inc. (hereinafter "Planned

Parenthood") and Glenn H. Weyhrich, M.D. (hereinafter "Dr. Weyhrich").  Planned Parenthood

is a not-for-profit organization located in Boise, Idaho, which provides medical and educational

services to women and men.  Planned Parenthood services include pregnancy diagnosis and

counseling, contraceptive counseling, provision of all methods of birth control, HIV/AIDS

testing, etc.  Although Planned Parenthood does not perform abortion services, it does provide its

patients with referrals to providers of those services.

Plaintiff Dr. Weyhrich is a physician licensed to practice medicine in the State of Idaho,

and is a board-certified obstetrician and gynecologist who maintains a private ob/gyn practice in

Boise.  Dr. Weyhrich provides an array of medical services, including abortions.  Among Dr.

Weyhrich's patients seeking abortions are minors.[2]

## II.

## PROCEDURAL BACKGROUND.

On June 26, 2000, Plaintiffs filed their first motion for a preliminary injunction against

the challenged statutes.  Following a preliminary injunction hearing, this Court issued a

Memorandum Opinion and Order enjoining Defendants from enforcing three limited portions of

the challenged statutes.  First, the Court enjoined the requirement that a woman seeking an

abortion must present positive identification.  This finding relied on the ground that a large

fraction of Hispanic migrant workers will be unable to obtain the required identification in a

timely manner.  Second, the Court enjoined the penalty provision in so far as it would criminally

---

[2]     The number of induced abortions performed in Idaho have steadily declined since
a high of 2706 in 1981 to 801 in 2000. Abortion procedures for women under the age of
eighteen compose 7% of the 2000 total, or 60 abortion procedures.

punish any physician for performing an abortion upon a minor as a result of a medical emergency. Third, the Court enjoined the venue provision for judicial bypass hearings on the ground that the provision would require a minor to file her petition in the judicial district where she then resides even though a court in a different judicial district might be more convenient.

In response, the Idaho legislature enacted certain amendments to the statutes in March 2001. First, the legislature eliminated the positive identification requirement as a prerequisite for performing an abortion. Under the earlier version of the law, a physician was required to secure positive identification of the patient's age before performing the abortion or be in violation of the Act. A physician may now perform an abortion upon a woman based on her representation that she was over the age of 18 or was otherwise an emancipated minor. If it turned out that this representation was not true, the physician could be liable to sanctions under the Act. However, the amended statute would allow the physician to avoid criminal and administrative liability if the physician obtains either positive identification or other documentary evidence from which a reasonable person could have concluded that the woman seeking the abortion was either an emancipated minor or over the age of eighteen. *See* Idaho Code § 18-614(1). Second, the legislature added the "knowingly" scienter requirement for any criminal punishment under the penalty provision . *See* Idaho Code § 18-605(3). Third, the legislature amended the venue provision in order to allow the minor to file her petition in either the county where she resides or the county where she chooses to have her abortion. *See* Idaho Code § 18-609A(1)(b)(i).

Subsequent to the amendments, Plaintiffs moved for preliminary injunction of the amended venue provision. Plaintiffs argued that the amended venue provision was more restrictive than the provision previously enjoined. The Court concluded that "minors need to

**Memorandum Opinion and Order – Page 3**

have considerable flexibility in seeking access to their state court system in a convenient manner" and granted Plaintiffs' motion for an injunction of the amended venue provision.

Plaintiffs continue to challenge the following portions of Idaho's parental consent law: (1) portions of the judicial bypass provision, Idaho Code §§ 18-609A(1)(a)(iv), 18-609A(1)(b)-(d); (2) portions of the medical emergency provision, Idaho Code §§ 18-609A(1)(a)(v), 18-609A(5)(c)(i); and (3) the provisions imposing penalties upon physicians and creating defenses thereto, Idaho Code §§ 18-605, 18-614. A trial was conducted in this matter commencing on September 4, 2001, and proceeding through September 7, 2001. The Court is now prepared to issue its Memorandum Opinion and Order.

## III.

## STANDARD OF REVIEW.

### A.    Undue Burden Test.

The United States Supreme Court has determined that the Fourteenth Amendment protects a woman's choice whether or not to terminate her pregnancy. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L.Ed.2d 674 (1992). The woman's liberty is not so unlimited, however, that from the outset the State cannot show its concern for the health of the pregnant woman or the life of the unborn. *Id.* at 871, 875-76; *Roe v. Wade*, 410 U.S. 113, 162, 93 S. Ct. 705, 731, 35 L.Ed.2d 147 (1973). In fact, this interest "has been given too little acknowledgment and implementation by the Court in its subsequent cases." *Casey*, 505 U.S. at 871. Because of its interest in the health of the pregnant woman and the potentiality of human life, "States are free to enact laws to provide a reasonable framework for a woman to make a decision that has such profound and lasting meaning." *Id.* at 873.

**Memorandum Opinion and Order – Page 4**

Not every law which makes it more difficult to exercise a constitutionally protected right,

however, is an infringement of that right. *Id.* Rather, states are generally granted "substantial

flexibility in establishing the framework" within which a constitutionally protected right is

exercised. *Id.* The Supreme Court has noted:

> The fact that a law which serves a valid purpose, one not designed
> to strike at the right itself, has the incidental effect of making it
> more difficult or more expensive to procure an abortion cannot be
> enough to invalidate it. Only where state regulation imposes an
> undue burden on a woman's ability to make this decision does the
> power of the State reach into the heart of the liberty protected by
> the Due Process Clause.

*Id.* at 874.

It is recognized that "[a]ll abortion regulations interfere to some degree with a woman's

ability to decide whether to terminate her pregnancy." *Id.* Nevertheless, "[n]ot all burdens on the

right to decide whether to terminate a pregnancy will be undue." *Id.* at 876. A government

regulation cannot be an unconstitutional "undue burden" simply because it makes a woman's

choice regarding abortion more difficult. "[I]nconvenience, even severe inconvenience, is not an

undue burden. Instead, a court's proper focus must be on the practical impact of the challenged

regulation and whether it will have the likely effect of preventing a significant number of women

for whom the regulation is relevant from obtaining abortions." *Karlin v. Foust*, 188 F.3d 446,

481 (7th Cir. 1999).

Nor is a statute unconstitutional simply because the challenged government regulation

may have the effect of causing a number of women to personally and thoughtfully reconsider

their decision to terminate a pregnancy. Rather, a challenged regulation is not unduly

burdensome unless it overcomes the will of the woman such that she no longer has the ability to

exercise her right to choice and she is thereby prevented from having an abortion that she

otherwise would have desired. "What is at stake is the woman's right to make the ultimate

decision, not a right to be insulated from all others in doing so." *Casey*, 505 U.S. at 877. It is

clear from *Casey* that there is no "undue burden" unless the challenged regulation has "a strong

likelihood of *preventing* women from obtaining abortions rather than merely making abortions

more difficult to obtain." *Karlin*, 188 F.3d at 482 (emphasis in original).

**B.    Large Fraction.**

The Court in *Casey* explained that a state regulation unconstitutionally creates an undue

burden only if "in a large fraction of the cases in which [the regulation] is relevant, it will operate

as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895.

The large-fraction test from *Casey* was adopted by the 9th Circuit in *Planned Parenthood of*

*Southern Arizona v. Lawall*, 180 F.3d 1022, 1027 (9th Cir. 1999), amended by 193 F.3d 1042

(9th Cir. 1999).

In *Casey*, the Court first identified the class of women whose conduct would be impacted

by the challenged regulation and determined the size of the identified class. *Casey*, 505 U.S. at

894-95. The Court then considered whether the challenged regulation would create a

"substantial obstacle" to a large fraction of the women in the identified class. *Id*. If the answer is

in the negative, the challenged regulation is not an undue burden and is not unconstitutional. *Id*.

at 895.

In adopting *Casey*'s "large fraction" test, the Ninth Circuit Court of Appeals contrasted

the evidentiary requirements necessary to succeed on a facial challenge under *Casey* and under

*United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987): "Under *Salerno*,

no factual showing of unconstitutional applications can render a law unconstitutional if it has any

constitutional application. Under *Casey*, a factual showing of unconstitutional application in 'a

large fraction of the cases' where the law applies can render a law unconstitutional, even if it has

some constitutional applications." *Lawall*, 180 F.3d at 1025. Therefore, the Ninth Circuit Court

of Appeals recognized the factual requirements placed upon plaintiffs when mounting a facial

challenge under *Casey*.[3]

In the present case, Plaintiffs contend that the question is not whether a "large fraction" of

affected women will be harmed or obstructed by the Idaho parental consent law's judicial bypass

provisions or medical emergency provision. Rather, Plaintiffs insist that the issue is whether the

health of *some* women will be harmed by the Idaho law. In support, Plaintiffs cite *Stenberg v.*

*Carhart*, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000). In *Stenberg*, the Supreme

Court specifically rejected the argument that the Nebraska ban on partial birth abortions should

be upheld without a health exception because women need the procedure only rarely. *See* 530

U.S. at 933-34. The Court reasoned that "the State cannot prohibit a person from obtaining

treatment simply by pointing out that most people do not need it," and struck down the law for

failing to protect women's health. *Id.* at 934, 937-38.

Given that the *Stenberg* decision did not explicitly address whether a "large fraction" of

women would be affected by the Nebraska statute at issue, this Court finds that Plaintiffs'

interpretation of the *Stenberg* decision is excessively broad. In the introductory paragraph of

---

[3]     A petition for rehearing *en banc* was filed in *Lawall,* which was denied. In an opinion dissenting from the denial of the petition for rehearing, three circuit judges strongly criticized the decision to use the *Casey* standard for facial challenges to statutes regulating abortions as opposed to the standard articulated in *Salerno.*

*Stenberg*, the Supreme Court stated that it would "not revisit [the] legal principles" of *Casey* and *Roe. Id.* at 921. The Court continued its preliminary statement by reiterating the language of the undue burden test in *Casey*: "[A] law designed to further the State's interest in fetal life which imposes an undue burden on the woman's decision before viability" is unconstitutional. *Id.*; *quoting Casey*, 505 U.S. at 877. An "undue burden is . . . shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Ibid.*

This Court further notes that the *Stenberg* Court's analysis and conclusion is consistent with the principles applied in *Casey.* In finding the Nebraska statute unconstitutional, the Supreme Court stated that "[a]ll those who perform abortion procedures using that method [D & E partial birth abortion procedures] must fear prosecution, conviction, and imprisonment. The result is an undue burden upon a woman's right to make an abortion decision." *Id.* at 945-46. Accordingly, as it has done throughout the course of this litigation, this Court will apply the principles set forth in *Casey* and *Roe.* Specifically, the Court will endeavor to determine whether Idaho's parental consent law "operate[s] as a substantial obstacle to a woman's choice to undergo an abortion" in "a large fraction of the cases in which [the consent law] is relevant." *Casey*, 505 U.S. at 895.

## C.    Effect Upon Minors.

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74, 96 S. Ct. 2831, 2843, 49 L.Ed.2d 788 (1976); *see also Bellotti v. Baird*, 443 U.S. 622, 633, 99 S. Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (hereinafter *Bellotti II*). "[O]ur cases show that although children

generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern . . . sympathy, and . . . paternal attention.'" *Bellotti II*, 443 U.S. at 635. The Court has long recognized that "the State has somewhat broader authority to regulate the activities of children than of adults." *Danforth*, 428 U.S. at 74. This is due to the fact that "the status of minors under the law is unique in many respects." *Bellotti II*, 443 U.S. at 633. There are three reasons why "the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." *Id.* at 634. "The State commonly protects its youth from adverse governmental action and from their own immaturity by requiring parental consent to or involvement in important decisions by minors." *Id.* at 637. It is a cardinal rule that "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither provide nor hinder." *Id.* (citation omitted).

Nevertheless, "[t]he need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." *Id.* at 642. As a result, the Supreme Court has held that the unique consequences of the abortion decision make it inappropriate "to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent." *Danforth*, 428 U.S. at 74; *see also Bellotti II*, 443 U.S. at 643. In order to avoid this problematic situation, a State must provide a judicial hearing whereby the

parental consent requirement (which might result in the potential for or the possibility of the arbitrary veto power) can be bypassed. *Bellotti II*, 443 U.S. at 643. In addition, the Court held that a State could not impose unduly burdensome restrictions on a minor's "initial access" to the judicial bypass procedure. *Id.* at 648. Any judicial bypass procedure adopted by a state must take "reasonable steps" to prevent the public from learning the identity of the minor, *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 513, 110 S. Ct. 2972, 2980, 111 L.Ed.2d 405 (1990) (hereinafter *Akron II*), and insure that the proceedings are completed with sufficient expedition to allow for an abortion to be obtained in the event that the minor is granted a judicial bypass. *Bellotti II*, 443 U.S. at 644.

**D.     Statutory Interpretation.**

Because this Court must construe and interpret the statutory provisions challenged in the instant case, a brief discussion of the standards governing statutory interpretation is appropriate. The United States Supreme Court has consistently held that, when a statute comes under constitutional scrutiny, there is a presumption of constitutionality. *See Akron II*, 497 U.S. at 514; *Planned Parenthood Assoc. of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476, 493, 103 S. Ct. 2517, 2526, 76 L.Ed.2d 733 (1983); *Clements v. Fashings*, 457 U.S. 957, 963, 102 S. Ct. 2836, 2843, 73 L.Ed.2d 508 (1981). When enacting statutes, legislatures are ordinarily presumed to have acted constitutionally. *See Clements*, 457 U.S. at 963. As a result, the Court has noted that "[w]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." *Akron II*, 497 U.S. at 514 (*quoting Ashcroft*, 462 U.S. at 493).

"It is reasonable to assume . . . that a state court presented with a state statute specifically governing abortion consent procedures for pregnant minors will attempt to construe the statute

consistently with constitutional requirements." *Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 441, 103 S. Ct. 2481, 2498, 76 L.Ed.2d 687 (1983) (hereinafter "*Akron I*"). "Absent a demonstrated pattern of abuse or defiance, a State may expect that its judges will follow mandated procedural requirements." *Akron II*, 497 U.S. at 515. "[T]he federal courts, as a matter of federalism and comity, should not sustain a facial challenge to a state statute that has yet to be construed by state courts, when a reasonable construction exists which would eliminate the constitutional infirmity." *Planned Parenthood of Blue Ridge v. Camblos*, 155 F.3d 352, 383 (4th Cir. 1998), *cert. denied,* 525 U.S. 1140, 119 S. Ct. 1031, 143 L.Ed.2d 40 (1999).

## IV.

### THE JUDICIAL BYPASS TO PARENTAL CONSENT.

**A.    Case Law.**

The Supreme Court has held that if a state decides to require a pregnant minor to obtain one or both parents' consent to an abortion, the state also must provide an alternative procedure under which authorization for the abortion can be obtained. *See Planned Parenthood v. Lawall,* 180 F.3d 1022, 1027 (9th Cir. 1999) (citing *Bellotti II,* 443 U.S. at 643). The waiver must be granted if the minor can convince the finder of fact either that she is mature enough to decide about an abortion on her own or that the proposed abortion would be in her best interest. *See Akron II,* 497 U.S. at 511; *Lawall,* 180 F.3d at 1027-28.

There is no dispute that a state may require that minors seeking abortion obtain parental consent, but to pass constitutional scrutiny, the minor must be given an alternative procedure ("bypass") by which she can obtain a waiver of the requirement. *See Bellotti II,* 443 U.S. at 649; *Casey,* 505 U.S. at 899 (reaffirming *Bellotti II*); *Lawall,* 180 F.3d at 1027, amended by 193 F.3d

1042 (9th Cir. 1999). In *Bellotti II*, the Supreme Court established the requirements for that

bypass: The waiver must be granted if the minor can convince the finder of fact either that she is

mature enough to decide about abortion on her own or that the proposed abortion would be in her

best interests. *Bellotti II*, 443 U.S. at 643-44; *see also Akron II*, 497 U.S. at 511; *Lawall*, 180

F.3d at 1027-28. Furthermore, "[t]he proceeding in which this showing is made must assure that

a resolution of the issue, and any appeals that may follow, will be completed with anonymity and

sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti

II*, 443 U.S. at 644; *Lawall*, 180 F.3d at 1028.

**B.    The Idaho Parental Consent Law's Venue Restriction.**

In September of 2000, this Court preliminarily enjoined the Idaho parental consent law's

provision that required a minor seeking to waive the parental consent requirement to file her

bypass provision in the judicial district where she lives. In response to the Court's injunction, the

Idaho legislature amended the parental consent law's venue provision. Under the law that went

into effect July 1, 2001, a minor seeking a waiver of the requirement of parental consent has a

choice of two counties in which to file her judicial bypass petition – the county where she lives or

the county where she is going to have the abortion. *See* Idaho Code § 18-609A(1)(b)(i).

As the Court noted in its June 29, 2001, Order, minors need to have considerable

flexibility in seeking access to their state court system in a convenient manner. *See Indiana

Planned Parenthood Affiliates Assoc. Inc. v. Pearson*, 716 F.2d 1127, 1142 (7th Cir. 1983). The

June 29, 2001, Order also pointed to an identical venue restriction which was enjoined by a

federal district court in Tennessee. *See* Order at 5 n.2 (citing *Memphis Planned Parenthood, Inc.*

*v. Sundquist*, 2 F.Supp.2d 997, 1005 (M.D. Tenn. 1997)).[4] Accordingly, the Court preliminarily enjoined the portion of Idaho Code § 18-609A(1)(b)(i) (as amended by 2001 Idaho House Bill No. 340), which states that "The petition shall be filed in the county where the minor resides or the county where the abortion is caused or performed."

A narrow venue restriction creates several problems for minors in Idaho. As Plaintiffs pointed out during the course of the trial, Idaho is a very large and rural state with only six abortion providers located in three counties.[5] Many counties have small populations and only one courthouse, located in the center of town along with all other offices of government. Also, Idaho's venue restriction will force those minors who cannot file at home to make three trips to the abortion provider's county: once to file the petition, a second time for the hearing, and a third time for the abortion. The Court concludes that the constitutionality of venue restrictions have to be analyzed as it would apply in the particular state in question. Each state's circumstances vary as to geography and population and courthouse locations; thus, a venue restriction that may not be an undue burden in a geographically small state with a large population could impose an undue burden in a geographically large state with a small population.

---

[4]     The district court decision was subsequently overruled by the Sixth Circuit in *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456 (6th Cir. 1999). The Sixth Circuit noted that Tennessee's parental consent act permitted the minor seeking judicial bypass to petition "the juvenile court of any county of this state," whereas the rule at issue required the minor to file her petition in either the county in which she resides or the county in which the abortion is sought. In reversing the district court, the circuit court found that the trial court incorrectly assumed that the rule trumped the act. *Id.* at 484.

[5]     At trial, plaintiffs presented two witnesses – Amy Lucid and Marisa Campagna – with extensive experience dealing with minors who seek judicial bypasses. These witnesses explained the obstacles that Idaho's venue restriction poses to minors. *See* Tr. 178:8-19; *see also* Tr. 159:17-19.

Given the burdens that Idaho's venue restriction imposes on minors needing to pursue a bypass, the Court finds that such a restriction is impermissible. In reaching this conclusion, the Court notes that Defendants have no legitimate state interest in restricting minors in this way. In fact, when the Court asked defense counsel to articulate the state interest in the venue restriction, counsel stated: "We have no interest." Tr. 409:23-410:5 (Hearn). Because the State has not advanced any interest in burdening minors in the ways that Plaintiffs have demonstrated, the venue restriction must be declared unconstitutional.

## C.    The Bypass Procedure's Time Frame.

Idaho's parental consent law also requires that a hearing be held no later than five days from the filing of the petition and that an order shall be entered no later than five days after the conclusion of the hearing. *See* Idaho Code § 18-609A(1)(b)(iii),(iv). However, Plaintiffs note that a court "may enlarge the times set forth pursuant to this subsection upon the request of the minor or upon other good cause appearing." *See* Idaho Code § 18-609A(1)(d). Plaintiffs assert that without a definition of "good cause" or a finite time limit in which a petition must be finally adjudged, the bypass procedure fails to guarantee expediency.

Defendants argue that Idaho's district courts are not only admonished that this proceeding will be expedited, but are mandated that a decision will be entered within ten days of the application. Defendants contend that this time frame is substantially less than the statute challenged in the case of *Akron II*, 497 U.S. 502, which was likely to result in up to a 22-day delay and was held constitutional. While Idaho's parental consent law does provide for an expansion of that time when good cause is shown, Defendants argue that any such decision will be based on the best interest of the minor.

In *Bellotti II*, 443 U.S. 622, the Supreme Court held that if a state decides to require a

pregnant minor to obtain one or both parents' consent to an abortion, the state also must provide

an alternative procedure under which authorization for the abortion can be obtained. *See id.* at

643. In subsequent cases, the Court has repeatedly affirmed *Bellotti II*'s holding. *See Lambert v.*

*Wicklund*, 520 U.S. 292, 295, 117 S. Ct. 1169, 1170, 137 L.Ed.2d 464 (1997); *Akron II*, 497

U.S. at 510; *Hodgson v. Minnesota*, 497 U.S. 417, 461, 110 S. Ct. 2926, 111 L.Ed.2d 344 (1990)

(plurality opinion); *Planned Parenthood Ass'n v. Ashcroft*, 462 U.S. 476, 491 n. 16, 103 S. Ct.

2517, 76 L.Ed.2d 733 (1983).

For a judicial bypass provision to avoid fatal vagueness under *Bellotti II*, the trial court's

review of a minor's application must be performed within specific, determinate time limits. "[A

bypass provision] must assure that a resolution of the issue, and any appeals that may follow, will

be completed with . . . sufficient expedition to provide an effective opportunity for an abortion to

be obtained." *Bellotti II*, 443 U.S. at 644. As the Ninth Circuit has stated:

> Because time is such a critical factor, relating both to a woman's
> health and the exercise of her constitutional right to an abortion,
> we conclude that the . . . bypass procedure, which does not contain
> a time period within which the state district court must rule on a
> minor's petition and thus may delay her right to implement the
> bypass procedure, possibly indefinitely, does not sufficiently
> protect a pregnant minor's constitutional right to an abortion.

*Glick v. McKay*, 937 F.2d 434, 442 (9th Cir. 1991), *overruled on other grounds by Lambert*, 520

U.S. 292.

Idaho's parental consent law contains specific time frames which can only be expanded at

the minor's request or for good cause. The fact that good cause may be found to continue a

hearing for a short period of time under some remote set of circumstances does not render the

Memorandum Opinion and Order – Page 15

statute unconstitutional. Taken as a whole, the procedures for a judicial bypass provide an appropriate constitutional framework for expedited judicial resolution of any petitions. The Court trusts that a trial court will use discretion when and if it expands time periods for the bypass when good cause is shown. Accordingly, the Court finds that the time frame outlined for bypass proceedings in Idaho's parental consent law meets the *Bellotti II* expediency criterion.

**D.    The Two-Day Window to File an Appeal.**

The Idaho law further requires that if a district court denies a minor's bypass petition, she must file a notice of appeal within two days. Idaho Code § 18-609A(1)(c). Her time runs without regard to whether she actually receives notice of the court's decision, which may occur any time during a five-day window. Therefore, if a minor is to appeal within two days of the district court's decision, she must learn of the decision, figure out how to appeal, and file a notice of appeal.

Although a few states' short appellate windows have been upheld, Plaintiffs note that those states' bypass procedures have procedural safeguards to help ensure that a minor does not lose her right to appeal. First, many states require the court to rule immediately at the end of the hearing. Second, other states' laws assure that the minor receives notice of the trial court's decision with enough time that she has an opportunity to effectuate an appeal.

In contrast, Idaho's parental consent law does not guarantee that the minor will have notice of the district court's denial in time to meet the two-day window. Under the governing rule, the district court is required to notify the minor of her right to appeal and of the two-day appellate window when it serves its decision. Idaho App. R. 44.1(a)(2). However, the time to appeal runs from the time the court issues its order; not from the time the minor receives the

court's service. The method of service provided under the Idaho rules – a mailing from the court, *see* Idaho App. R. 47 – may not only jeopardize her confidentiality,[6] but in all likelihood will not arrive in time to preserve her right to appeal.[7] Therefore, to effectuate an appeal, a minor would have to receive the mailed service from the court, understand the notice, and travel back to the court to "physically fil[e]" the notice of appeal – all within two days of the ruling.

Further, there is no justifiable state interest in restricting the minor in this way. When asked during oral argument about any state interest that supported this restriction, counsel for defendants replied that "the state interest is to get the expeditious appeal." Tr. 414:21-22. Although this interest is legitimate, the constitutional mandate of expedition is meant to ensure that the state gives the minor an effective opportunity to obtain an abortion. Thus, the Court finds that the two-day appellate window unconstitutionally denies minors of effective opportunities to seek a final resolution of their bypass petitions.[8]

**E.      The Right to Assistance Provisions.**

Plaintiffs also argue that Idaho's parental consent law "does not require that a minor be advised at any point in the district court proceedings that she may have any sort of assistance whatsoever in seeking a bypass." Plaintiffs further contend that a minor is deprived of "an effective opportunity for an abortion to be obtained" if the court provides the minor with only a

---

[6]      The Court is assuming that, in almost all cases, the mailing of the bypass order from the district court will be sent to the minor's guardian ad litem to protect her confidentiality.
[7]      The Court does not wish to cast unwarranted dispersion on the U.S. Postal Service, but it is almost inconceivable that a minor would receive the notice through the mail in two days.
[8]      Even more onerous is the express direction in the statute that prohibits the trial court, even upon a showing of good cause, from expanding the time to file the appeal. Idaho Code § 18-609A(1)(d).

**Memorandum Opinion and Order – Page 17**

guardian ad litem instead of legal counsel. For the following reasons, the Court finds that

Plaintiffs' contentions regarding these issues are simply unfounded.

The challenged portion of Idaho's judicial bypass provision regarding the assistance

provided to a minor seeking a judicial bypass hearing provides as follows:

> (i) . . . . A minor shall have the legal capacity to make and
> prosecute a petition and appeal as set out herein. A guardian ad
> litem may assist the minor in preparing her petition and other
> documents filed pursuant to this section and may seek appointment
> as set forth below. A guardian ad litem, whether prospective or
> appointed, must be an attorney properly licensed in this state. The
> court shall ensure that the minor is given assistance in filing the
> petition if the minor desires a guardian ad litem but no guardian ad
> litem is available.
> *       *       *
>
> (iii) A hearing on the merits of the petition shall be held . .
> . . The court shall appoint a qualified guardian ad litem for the
> minor if one is requested in the petition. If no qualified guardian
> ad litem is available, the court may appoint some other person to
> act in the capacity of a guardian ad litem, who shall act to fulfill the
> purposes of this section and protect the confidentiality and other
> rights of the minor.

Idaho Code §§ 18-609A(1)(b)(i), (iii).

1.    **Notice of the Availability of Assistance.**

The Idaho judiciary has adopted procedures ensuring that all minors are advised of the

availability of guardians ad litem. Defendants' Exhibit 200 contains a packet generated by the

Idaho Supreme Court and distributed to all district judges and court clerks for use during judicial

bypass proceedings. Among other documents, the packet contains a brochure and a form petition

for requesting a judicial bypass hearing. The packet cover letter states that the form is available

on the Idaho Supreme Court's Website at <www2.state.id.us/judicial/manual.htm>. The packet

cover letter also directs that "the brochure and the forms should be made available to the public

**Memorandum Opinion and Order – Page 18**

at each District Court Clerk's Office and Court Assistance Office."

The publicly available brochure is entitled "Consent for Abortions for Minors in Idaho" and contains a number of questions with corresponding answers. The second question in the brochure asks, "What should I do if I decide to seek permission from the court for an abortion?" The brochure answers this question by stating that a petition must be filed and explains what assistance is available:

> Once you are at the courthouse, you may state on the petition that you would like the court to appoint someone to help you. That person is called a guardian ad litem and should be a lawyer unless no lawyer is available. The guardian ad litem will help you prepare the papers and attend the hearing with you. You will not be charged a fee for filing the petition with the court and you will not have to pay the guardian ad litem.

The brochure expressly advises any minor who inquires that assistance is available through a guardian ad litem and that the assistance will be provided at no cost.

Even without this brochure, however, Defendants point out that all minors seeking a judicial bypass hearing will be required to acquire, read, and complete the judicial bypass petition, which is accompanied by an instruction sheet. The form and instructions are available directly from each District Court clerk's office and Court Assistance Office. For those minors who do not wish to visit either of these locations, the form and instructions are also available on the internet. *See* Exhibit 200, cover letter to packet. The first paragraph of the instruction sheet directly informs a minor who has received a form petition that she is entitled to assistance:

> The court must appoint an attorney or some other person to assist you in completing the necessary documents, preparing for the court hearing, and accompanying you to the court. The person the court appoints is called a guardian ad litem. You do not have to pay this person.

**Memorandum Opinion and Order – Page 19**

After reading the instruction sheet, the minor must then complete the actual petition form. On the second page of the petition, the minor must affirmatively state in paragraph 7 whether she requests, or does not request, a guardian ad litem. Even if the minor chooses not to request a guardian ad litem, paragraph 8 of the petition states that the court should nevertheless consider "whether it is appropriate to appoint a guardian ad litem" for the minor. In order to satisfy the request in paragraph 8, the court will be required to inquire of the minor regarding whether she is capable of proceeding alone or whether assistance should be appointed.

The Court finds that it would be highly unlikely that a minor seeking a judicial bypass in Idaho would not be informed that assistance is available. Although she *may* read about guardians ad litem in the publicly available brochure, she *will* read about guardians ad litem in the petition and accompanying instruction. She will also be required to state on the petition whether or not she wishes the court to appoint a guardian ad litem. In those cases where minors do not request a guardian ad litem, the court is required to consider whether it would nevertheless be appropriate to appoint assistance. Therefore, this particular challenge to Idaho's judicial bypass provision must fail in as far as it is based upon the alleged failure of the State to inform minors that assistance is available.

## 2.     *Attorney* Guardian Ad Litem v. *Non-Attorney* Guardian Ad Litem

Although the judicial bypass provisions adopted by the Idaho legislature clearly states that the trial court should appoint an attorney as a guardian ad litem, it also recognizes that there may be circumstances when an attorney is not available. In fact, there are counties in Idaho where there are no practicing attorneys. Plaintiffs focus on the exception, when an attorney is not available for appointment, to assert that a non-attorney guardian ad litem will not act as an

"advocate" for minors during the judicial bypass proceedings. In response, Defendants point out that the Idaho parental consent statute involves the rights of minors. The fact that guardians ad litem would be required to act as they do in all other situations where they represent minors is particularly evident from the fact that the statute refers to the Idaho Child Protective Act in two separate provisions. *See* Idaho Code §§ 18-609A(1)(a)(v), 18-609A(1)(b)(iv). Consequently, guardians ad litem who assist minors with judicial bypass proceedings are required by Idaho law to act as a special advocate and to protect the minor's interests.

The Plaintiffs have also argued that the State should provide an attorney rather than a guardian ad litem because non-attorney guardians ad litem may lack the necessary skills to assist a minor with the judicial bypass proceedings. While the Plaintiffs did present testimony under scoring the assistance a lawyer can provide in a bypass proceeding, the Court is not convinced that a non-lawyer would not be able to guide a minor through the judicial bypass procedures in a competent manner. As stated earlier, a non-lawyer will be the exception rather than the rule. Also, this is not an adversary proceeding where an attorney's knowledge of the law and procedural rules could have a far greater impact on ultimate results of the hearing. The trial court is charged with determining "whether the minor should be granted the right to self-consent to the abortion or whether the court's consent to causing or performing of the abortion, despite consent of a parent, is in the best interest of the minor." Idaho Code § 18-609A(1)(b)(iii). The Supreme Court has acknowledged that it is unlikely that a state court "will treat a minor's choice of [complaint] forms without due care and understanding for her unrepresented status." *Akron II*, 497 U.S. at 517.

In sum, this Court concludes that Plaintiffs have failed to show that this portion of

Idaho's judicial bypass provision does not provide minors with an "effective opportunity for an abortion to be obtained" even if on some rare occasion, a non-lawyer, is appointed as the guardian ad litem.

**F.    The Requirement That a Judge Hearing a Bypass Petition Must Report Criminal Conduct to Law Enforcement.**

Idaho's parental consent law requires a judge to report criminal conduct to law enforcement if he learns of such conduct while hearing a bypass petition.  In particular, the statute states that:

> If, in hearing the petition, the court becomes aware of allegations which, if true, would constitute a violation of any section of title 18, Idaho Code, by a person other than the petitioner . . . the court shall order, upon entry of final judgment in the proceeding under this subsection, that an appropriate investigation be initiated or an appropriate information, complaint or petition be filed.  Such allegations shall be forwarded by the court with due consideration for the confidentiality of the proceedings under this section.  If, but for the requirements for proof as set forth in this section, the minor would have been privileged to withhold information given or evidence produced by her, the answers given or evidence produced and any information directly or indirectly derived from her answers may not be used against the minor in any manner in a criminal case, except that she may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering or failing to answer, or in producing or failing to produce, evidence as required by the court.

Idaho Code § 18-609A(1)(b)(iv).

Essentially, this provision requires the judge to report and law enforcement to investigate the sexual partner of every minor who seeks a judicial bypass.  No one will be seeking a bypass unless she is under the age of eighteen, unmarried, and pregnant.  And, in Idaho, it is a crime to have sexual intercourse with any female under the age of eighteen – regardless of the male's age and regardless of whether she consented to intercourse.  *See* Idaho Code §§ 18-6101 (rape), 18-

6603 (fornication).

The Court finds that this reporting requirement violates the constitutional rights of minors by breaching their confidentiality. The Court also finds that requiring minors to identify their partner would create a severe chilling effect on the decision to seek an abortion in the first place, and is a constitutionally undue burden. The Court will address each point in turn.

To pass constitutional scrutiny, a judicial bypass proceeding "must assure that a resolution of the issue . . . will be completed with anonymity . . . ." *Bellotti II*, 443 U.S. at 644. Although the Idaho statute states that the court is to forward the allegations of criminal conduct to law enforcement "with due consideration for the confidentiality of the [bypass] proceedings," Idaho Code § 18-609A(1)(b)(iv), any such report will necessarily result in a breach of the minor's confidentiality.

The Court cannot contemplate how a prosecutor could investigate and proceed against a minor's sexual partner without him learning who reported him. The defendant is entitled to receive any documents and any exculpatory evidence in the state's possession, including the judge's report and/or the transcript of the bypass hearing. *See* Idaho R. Crim. P. 16 (mandatory disclosure of information to the defendant by the prosecution). An example highlights this point. If a minor is not able to identify with certainty which of two partners is the father, the trial court would be required to report both names to the authorities. In preparing a defense to a criminal charge, the defendant would be entitled to know of this fact and the identity of the minor seeking the abortion, to test her recollections, and the identity of the other partner.

Additionally, the minor's breach of confidentiality will not be limited to her partner and his defense counsel. Indeed, it would be impossible for the prosecutor to conduct an

investigation, or for her partner to prepare a defense, without talking with people close to him and the minor about their sexual behavior. If the defendant is a juvenile, his parents must receive notice of the information, complaint, or petition, which will "set forth plainly . . . the facts" surrounding the alleged crime. *See* Idaho Code §§ 20-510; 20-512; *cf.* Idaho Code § 16-1609 (requiring that a report from investigation under the Child Protective Act "shall be delivered to the court with copies to each of the parents or other legal custodian"). Furthermore, if a case goes to trial, the facts surrounding the alleged crime will become publicly available. In addition, it is highly unlikely that the minor's sexual partner could be tried and convicted without the testimony of the minor herself.

In challenges to parental involvement laws, courts have repeatedly held that to pass constitutional scrutiny, a minor must have a confidential bypass option that does not result in a report to another government agency. In *Hodgson v. Minnesota*, the Supreme Court considered Minnesota's parental notification law which gave a minor three options: (1) notify her parents; (2) tell her physician that she is a victim of abuse or neglect in which case the physician had to inform a local welfare or law enforcement agency within 24 hours; or (3) petition a court for a confidential bypass. *See* 497 U.S. at 426-27 & nn.7, 9. The Minnesota law survived constitutional scrutiny only because there was a separate and completely confidential bypass alternative – the minor could choose to seek a bypass and not trigger any reporting requirements. *Id.* at 461; *see also Manning v. Hunt*, 119 F.3d 254, 273 (4th Cir. 1997) (upholding North Carolina reporting requirement because "[m]ost important, as was the case in *Hodgson*, a minor who does not disclose the abuse can still receive judicial consent if she can prove that she is mature or that the abortion is in her best interests"). *Planned Parenthood, Sioux Falls Clinic v.*

*Miller,* 63 F.3d 1452 (8th Cir. 1995) (striking South Dakota's statute because there was no procedure where a minor could seek a confidential judicial bypass where the minor could elect not to disclose the identity of her partner). In these cases, although the statutes contained reporting requirements, the minor needed to retain the option to pursue a bypass confidentially. An Idaho minor, in contrast, has no such option.

In sum, a minor in Idaho has only two choices: (1) obtain the consent of a parent; or (2) petition a court for a bypass that will necessarily result in her partner being reported and her sexual behavior becoming the subject of a criminal investigation. Because any bypass will trigger an investigation, the Idaho minor has no confidential alternative to parental consent.[9] It is the minor's right to privacy that she is exercising in seeking a judicial bypass in the first place; doing so must not make information about her sexual behavior come to light. *See Akron II,* 497 U.S. at 513 (judicial bypass procedure of parental consent statute must take "reasonable steps to prevent the public from learning of the minor's identity"). Therefore, the Court finds that the requirement that a judge hearing a bypass petition must report criminal conduct to law enforcement is unconstitutional.

Aside from the confidentiality, the Court also concludes that Idaho's reporting requirement will have such a chilling effect on the minor's decision whether to even seek an abortion in the first place that it creates an undue burden and is therefore unconstitutional. In

---

[9]        During oral argument, Defendants stated that the judge hearing the bypass could not report the minor's name to law enforcement. Tr. 421:1-4 (Hearn). Further, Defendants asserted that the judge should not report her partner's name either. Tr. 421:14-16 (Hearn); *see also* Tr. 420:16-17 (Hearn). Later, Defendants admitted that the judge would not ask the name of the minor's partner but would be required to report the minor herself to law enforcement. *See* 424:18-425:10 (Hearn). Additionally, Defendants admitted that turning her name over for an investigation will result in a breach of her confidentiality. Tr. 422:20-423:9 (Hearn).

almost all cases where a pregnant minor seeks a judicial bypass, she has engaged in consensual sex. Tr. 175:12-55 (Lucid). In Massachusetts, minors seeking an abortion inquire about whether there are legal consequences for their partners if they pursue a judicial bypass. Tr. 173:22-174:24 (Lucid). Ms. Lucid also testified at trial that when minors learn there will be no legal consequences for their partners, they express relief. Tr. 175:2-11.

The Court finds that Idaho's reporting requirement will deter minors from seeking an abortion once they are aware of the potential criminal prosecution of their partners. *See Hodgson*, 497 U.S. at 460 (providing that if a statute requires a minor to report abuse in order to bypass parental involvement law, her "reluctance to report . . . makes the abuse exception less than effectual") (O'Connor, J., concurring). With a guaranteed report to law enforcement that starts an investigation that could lead to a conviction of her partner, an Idaho minor has no real effective opportunity to bypass the parental consent requirement and this portion of the statute is unconstitutional.[10]

## V.

### THE MEDICAL EMERGENCY PROVISIONS.

#### A.   Definition of "Medical Emergency."

Plaintiffs first argue that the definition of "medical emergency" in Idaho Code § 18-

---

[10]      This does not mean that there is no effective means to protect a minor who has suffered from sexual abuse, such as rape or incest. First, the minor can report the matter to appropriate authorities. If the minor is reluctant to report the matter, Idaho Code § 16-1619 requires any physician, resident on a hospital staff, intern, nurse, school teacher, day care personnel, social worker, or other persons having reason to believe a minor has been abused, to report such matters within 24 hours to the Department of Health and Welfare or proper law enforcement authorities. This provision shifts the reporting requirement to third parties, as opposed to compelling the minor to identify her partner in what should be a confidential judicial bypass proceeding.

609A(5)(c)(i) is unconstitutionally narrow because it may be interpreted as to exclude conditions

such as: preeclampsia, inevitable abortion, premature rupture of membranes, cornual pregnancy,

ectopic pregnancy, HELLP Syndrome, IUD infections, leukemia complications, and Marfan

Syndrome. In Plaintiffs' view, these conditions are excluded because they do not fit the terms

"sudden," "unexpected" and "abnormal" as used in the medical emergency definition. Plaintiffs'

witnesses suggested that the medical conditions listed above (1) may not be "sudden" because the

condition may have a latent period where it progresses slowly over time, Tr. 43, 44, 117; (2) may

not be "unexpected" because the condition may be anticipated and patients may have been

advised that the condition may occur, Tr. 43-45, 112-13, 115-17, 121-22; and (3) may not be

"abnormal" because the pregnancy may have been normal prior to the occurrence of the

condition, Tr. 112, 115.

　　　　Defendants dispute Plaintiffs' restrictive interpretation of the terms "sudden,"

"unexpected" and "abnormal." Defendants contend, and the Court agrees, that the

evidence admitted at trial reveals why the definitions suggested by the Plaintiffs are

unreasonably restrictive and should be rejected. Dr. Earl Monte Crandall testified that the

term "sudden" refers to the "moment of diagnosis" by a physician. Tr. 458, 461. Dr.

Crandall also testified that the term "unexpected" does not refer to whether a physician

"anticipates" complications but instead refers to the fact that a physician cannot predict

"exactly when" an emergency is going to happen. Tr. 450, 473, 498-99. Dr. Crandall

further testified that all medical emergencies are "abnormal" because they do not

generally occur during normal pregnancies. Tr. 473-74, 499.[11]

Moreover, Plaintiffs' own witnesses appeared to support Dr. Crandall's testimony.

Dr. Mark D. Nichols apparently concurred in this interpretation when he testified that he

does not know "precisely when the emergency is going to occur [or] what it was going to

be." Tr. 137-38. Dr. Nichols further testified that he wished that he had a gauge that

would tell him when a medical emergency is going to happen and what the medical

emergency condition might be. Tr. 138. Dr. Nichols also testified that certain medical

conditions are "unexpected" because he does not know whether they will or will not arise

during pregnancy, even though there is some likelihood of the condition occurring. Tr.

139-40. Dr. Frederiksen concurred in this interpretation when she testified that

_____

[11]    Dr. Crandall testified that the medical emergency statute was "sufficiently clear
for the average physician in Idaho, the average gynecologist such as myself, to understand the
wording of the bill and to know what we can and what we can't do." Tr. 446. In Dr. Crandall's
view, "As a doctor, we're taught from the very beginning to think about things that could happen,
possible complications, anticipate problems, but we can't predict exactly what is going to
happen." Trial 449-50.

    With respect to specific medical conditions, Dr. Crandall testified as follows: With an
ectopic pregnancy, Dr. Crandall testified that he can anticipate a rupture "but we don't really
expect it to happen." Tr. 456. Dr. Crandall also testified that an ectopic pregnancy could be
slowly developing but that "our diagnosis in onset of symptoms is sudden." Tr. 458. Dr.
Crandall further testified that he thought "it would have been an emergency at the time that the
diagnosis was made." Trial 461. Dr. Crandall also testified that an ectopic pregnancy was
"abnormal" because it is not expected to occur in a normal pregnancy and would not be expected
in anyone. Trial 463-65.

    For essentially the same reasons, Dr. Crandall believed that the following medical
conditions also fell within the medical emergency definition: ruptured membranes, Tr. 465-74;
cornual pregnancies, Tr. 474-79; HELLP Syndrome, Tr. 486-489; IUD infections, Tr. 489-93;
leukemia complications, Tr. 493-96; Marfan Syndrome, Tr. 496-98; and preeclampsia, Tr. 480-
86. Dr. Crandall testified that he could not think of any true medical emergencies in a pregnant
woman that would not fall within the statutory definition of "medical emergency." Tr. 498. Dr.
Crandall further testified that the term "unexpected" is well understood in the medical
community and that most physicians would have the same definition for it. Tr. 518.

conditions which do not occur during an average pregnancy are "abnormal." Tr. 44. Dr.

Frederiksen also testified that the term "abnormal" was broad enough to encompass all of

the emergency conditions discussed at trial. Tr. 96.

In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 947 F.2d 682 (3rd

Cir. 1991), the Third Circuit Court of Appeals considered allegations that three life-

threatening medical conditions were unconstitutionally excluded because they did not fit

into the definition of "serious risk" as used in the medical emergency exception. *Id.* at

700. However, the Court of Appeals found the plaintiffs' interpretation to be "unduly

restrictive" and concluded that the challenged term was subject to a constitutional

interpretation which would include the three life-threatening medical conditions

postulated by the plaintiffs.[12] *Id.* at 700-01. In reaching its conclusion, the Court of

Appeals noted that statutes should be construed to sustain their constitutionality:

> Moreover, we read the medical emergency exception as
> intended by the Pennsylvania legislature to assure that compliance
> with its abortion regulations would not in any way pose a
> significant threat to the life or health of a woman. We believe it
> should be interpreted with that objective in mind. While the
> wording seems to us carefully chosen to prevent negligible risks to
> life or health or significant risks of only transient health problems
> from serving as an excuse for noncompliance, we decline to
> construe "serious" as intended to deny a woman the uniformly
> recommended treatment for a condition that can lead to death or
> permanent injury.

*Id.* at 700-01. After adopting a constitutional interpretation of the challenged term which

included the postulated medical conditions, the Court of Appeals noted that any doubt about their

---

[12]     The postulated medical conditions included inevitable abortion, prematurely
ruptured membrane, and preeclampsia. *See Casey*, 947 F.2d at 699-700. These are some of the
same conditions postulated by Plaintiffs in the instant case.

**Memorandum Opinion and Order – Page 29**

conclusion was resolved by the Supreme Court's directive that "a court is not to strike down a law as unconstitutional on the basis of a 'worst-case analysis that may never occur'" when confronted with a facial challenge.[13]  *Id.* at 701-02; *quoting Akron II*, 497 U.S. at 514.

When interpreting the Idaho medical emergency definition, the Court presumes that the Idaho legislature intended to act constitutionally by drafting a definition that would include all medical conditions that could lead to death or permanent injury. *See Akron II*, 497 U.S. at 514; *Clements*, 457 U.S. at 963; *Casey*, 947 F.2d at 700.  Additionally, the terms "sudden," "unexpected" and "abnormal" should be interpreted in such a manner that would further the intentions of the Idaho legislature. *See Casey*, 947 F.2d at 700.  These terms are readily susceptible to such an interpretation.

As this Court has already found, the challenged terms are readily susceptible to a constitutional interpretation and Plaintiffs' interpretation of the terms is unduly restrictive. *See* September 1, 2000, Memorandum Opinion and Order at 30.  Accordingly, the Court will reject Plaintiffs' restrictive interpretation for a more reasonable interpretation, which would further the Idaho legislature's intention of adopting a constitutional definition that included all life-threatening medical conditions.

**B.     The Medical Emergency Definition's Susceptibility of a Constitutional Interpretation.**

In the alternative, Plaintiffs argue that the terms "sudden," "unexpected" and "abnormal" are ambiguous and cause the medical emergency definition to be unconstitutionally vague. "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to

---

[13]     The statutory analysis undertaken by the Third Circuit Court of Appeals was expressly affirmed by the United States Supreme Court in *Casey*, 505 U.S. at 880.

provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 2498, 147 L.Ed.2d 597 (2000); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493 (9th Cir. 1996).

The Court will reject Plaintiffs' vagueness challenge for two reasons. First, the challenged terms are readily susceptible to a constitutional interpretation, as discussed *supra*. A reasonable and constitutional interpretation of the medical emergency definition will include all conditions that are life-threatening or that will result in permanent injury. Thus, the medical emergency definition will "not prohibit doctors from foregoing the Act's requirements when what are commonly perceived to be medical emergencies exist."[14] *Casey*, 947 F.2d at 702. Rather, physicians will be allowed to focus upon whether such a condition exists, which is "the type of 'judgment[] that physicians are obviously called upon to make routinely whenever surgery is considered.'" *Id*. (*quoting Doe v. Bolton*, 410 U.S. 179, 192, 93 S. Ct. 739, 748, 35 L.Ed.2d 201 (1973). As a result, this Court concludes that the medical emergency definition provides the fair warning required by the Due Process Clause and that the medical emergency definition is not void for vagueness. *See Casey*, 947 F.2d at 702.

Second, the Court will reject Plaintiffs' vagueness challenge because the evidence presented at trial reveals that the terms "sudden," "unexpected" and "abnormal" are words of common understanding and are readily understandable by people of ordinary intelligence. At trial, four different definitions of the term "emergency" and "emergent" were presented as

---

[14]     The Third Circuit Court of Appeals reached this conclusion "apart from the 'good faith clinical judgment' language" contained in the medical emergency definition considered in that case. *Casey*, 947 F.2d at 702.

included in four different medical dictionaries. All of these definitions included the terms "sudden" and "unexpected." The medical community would not use these terms if they were not understandable by physicians and others practicing medicine. Moreover, Dr. Frederiksen testified that the terms "sudden," "unexpected" and "abnormal" are words commonly used by physicians. Tr. 89-90. Further, Dr. Crandall testified that the medical dictionaries were authoritative. Tr. 443, 448, 457.

For the foregoing reasons, the Court concludes that the medical emergency definition is not unconstitutionally vague.

## C.    Post-Emergency Notification Requirements and Defenses.

Plaintiffs also challenge the post-emergency notification requirements found in Idaho Code § 18-609A(1)(a)(v). These notification requirements provide that "a physician shall, with due diligence, attempt to provide a parent of the unemancipated minor actual notification of the medical emergency." *Id.* If the physician does not "immediately contact[]" a parent, he must again attempt to provide actual notification with "due diligence" for eight hours following the abortion. *Id.* Then, notwithstanding whatever he accomplishes in those eight hours, he must provide actual notification within twenty-four hours. *See id.* The limited exception to these notification requirements provides that a minor's parent must be notified unless the physician "reasonably believes" that the minor is homeless or abandoned or "has suffered abuse or neglect such that [her] physical safety would be jeopardized if a parent were notified" and she is actually adjudged by a court to be homeless, abandoned, abused, or neglected. Idaho Code § 18-609A(1)(a)(v).

Notably, no other state's parental involvement law containing an emergency provision requires notice following an emergency abortion. While Idaho has a full page of post-procedure

requirements, the Pennsylvania statute upheld in *Casey* simply states that a doctor must get parental consent "[e]xcept in the case of a medical emergency." 18 Pa. Cons. Stat. Ann. § 3206(a). Like Pennsylvania, all other states allow a physician to proceed with treatment if he believes an abortion is necessary, without any requirements upon him following the procedure other than his ethical obligation to care for his patient.

## 1.    Abused and Neglected Minors.

In *Hodgson*, the Supreme Court held that a two-parent notice statute, with an exception for reported cases of abuse and neglect, was unconstitutional absent a confidential alternative for these minors. 497 U.S. at 460-61. Emphasizing that "[t]he combination of the abused minor's reluctance to report sexual or physical abuse, with the likelihood that invoking the abuse exception for the purpose of avoiding notice will result in notice, makes the abuse exception less than effectual," the Court upheld the law only because there was a completely confidential bypass that allowed abused minors not to report. *Id.*; *see also Miller*, 63 F.3d at 1461, 1463 (holding one-parent notification law with exception only for reported cases of child abuse and neglect insufficient because reporting could result in notice to parents of minor's abortion and because minors are reluctant to declare abuse); *Planned Parenthood of Blue Ridge v. Camblos*, 155 F.3d 352, 375-76 (4th Cir. 1998) (holding that exception to one-parent notification statute for only reported abuse and neglect might not satisfy *Hodgson* because of "the possibility that the provision's reporting requirement could indirectly result in notice to the abusive parent" and upholding the statute "because [it] include[d] a mandatory best interests bypass which allows an abused minor to bypass notice").

This Court finds that the "bypass" for abused and neglected minors will necessarily result in a breach of a minor's confidentiality, and therefore, lacks the effectiveness the Supreme Court demands. The Idaho law, in its treatment of abused and neglected minors, suffers from precisely

the defect identified in *Hodgson, Miller, and Camblos*: parental notification is only excused if the physician believes that notice would jeopardize the minor's physical safety. In such circumstances, the physician "shall . . . make a report to a law enforcement agency pursuant to section 16-1619, Idaho Code, and a petition shall be filed pursuant to section 16-605, Idaho Code, which petition shall include a reference to this code section." Idaho Code § 18-609A(1)(a)(v).

However, this report and petition will ultimately result in notice to the parent(s) because once the petition is filed, it will trigger an adjudicatory hearing, *see* Idaho Code § 16-1608, and a possible investigation, *see* Idaho Code § 16-1609. Further, the petition will be served on the minor's parents. *See* Idaho Code §§ 16-1605, 16-1606. Given that Idaho Code § 18-609A(1)(a)(v) requires that the petition include a reference to a code section entitled "Consent Required for Abortions for Minors," this service is effectively express notice that the minor had an abortion. Here, as in *Hodgson, Miller, and Camblos*, the purported "exception to notification for minors who are victims of neglect or abuse is, in reality, a means of notifying the parents." *Hodgson*, 497 U.S. at 460 (O'Connor, J., concurring). The Idaho law provides no confidential alternative. Accordingly, the Court finds that the post-abortion procedures regarding abused and neglected minors set forth in Idaho Code Section 18-609A(1)(a)(v) are unconstitutional.

**2.      Minors Who Are Not Homeless or Abandoned or Have Not Been Abused or Neglected in the Past.**

Under Idaho's parental consent law, except in those limited circumstances discussed *supra*, where the physician believes that "the minor has suffered abuse or neglect such that the minor's physical safety would be jeopardized," the minor has no option to avoid notification following an emergency procedure. *See* Idaho Code § 18-609A(1)(a)(v). Additionally, the law fails to provide an alternative to parental notice for those minors who have not suffered abuse in

the past, but who nonetheless might suffer abuse as a result of their parents learning of the abortion. Nor does it waive notice for those minors who have suffered or will suffer non-physical abuse. As the trial testimony revealed, minors are reluctant to report and a physician may not always be in a position to know whether a minor has suffered or will suffer abuse. *See* Tr. 47:7-17. Accordingly, a parental involvement law must allow the minor – regardless of the reasons she seeks to do so – to seek a waiver of the parental involvement requirement. *See Bellotti II*, 443 U.S. at 649.[15] For this additional reason, the fact that Idaho's parental consent law denies minors facing emergencies an opportunity to waive parental involvement, and to do so confidentially, the Court finds that the post-abortion procedures set forth in Idaho Code Section 18-609A(1)(a)(v) are unconstitutional.

## VI.

## PROVISIONS REGARDING PROHIBITED CONDUCT FOR PHYSICIANS.

This Court has recognized that a criminal statute may not impose an objective standard on a physician's performance of emergency abortions because such a standard chills his willingness to provide life or health-saving medical procedures. *See* Memorandum Decision and Order dated September 1, 2000. For this reason, this Court preliminarily enjoined the State from criminally prosecuting a physician who performs an abortion in a medical emergency situation.

During the course of the trial in this case, counsel for Plaintiffs orally requested clarification concerning the current status of the injunction as it applies to the criminal

---

[15]     Following *Bellotti*, no court in the country, looking to the merits, has upheld a parental involvement law that lacks a bypass. Further, laws that contained only an exception for abused minors have been held unconstitutional. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1463 (8th Cir. 1995) (striking down law that lacked a bypass for mature minors and minors for whom an abortion is in their best interests).

**Memorandum Opinion and Order – Page 35**

prosecution of a physician who performs an abortion as defined in Idaho Code §§ 18-609A(5)(c) and 18-609A(1)(a)(v).  On September 11, 2001, this Court held that Idaho Code §§ 18-609A(5)(c) and 18-609A(1)(a)(v) will remain enjoined pending a determination of the case on the merits.  The Court noted that Defendants had not moved to lift the preliminary injunction enjoining the above provisions.  Further, the addition of Idaho Code § 18-614, which provides certain defenses to physicians performing abortions on minors, did not automatically lift the injunction.

Idaho Code § 18-609A(1)(a) provides that "[n]o person shall knowingly cause or perform an abortion upon a minor unless" he complies with the parental consent requirement.  Under this provision, a subjective standard of liability seems to apply: to violate the statute a physician would have to *know* that the woman upon whom he was performing the abortion was a minor.  Idaho Code § 18-605 contains three provisions which impose criminal and administrative penalties on individuals who perform unlawful abortion.

Subsection 1 of Idaho Code § 18-605 provides for felony penalties for persons performing illegal abortions who are not licensed or certified to provide health care and is not relevant to the issues now before this Court.  Subsection 3 imposes felony penalties on persons who are licensed or certified to provide health care services, but requires that the individual "knowingly" violate the provisions of the statute, which ties back in to Idaho Code § 18-609A(1)(a).

Sections 18-609A and 18-605(3) provide the necessary "scienter" requirement that the Court had earlier found to be absent from these statutory provisions.  As the Supreme Court has stated, a "knowingly" scienter requirement ameliorates any vagueness challenge.  *See Boyce*

*Motor Lines, Inc., v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed.2d 367 (1952); *see also United States v. Doyle*, 786 F.2d 1440, 1443 (9th Cir. 1986) ("This ['knowingly'] scienter requirement is sufficient to withstand any vagueness challenge.").

The Court will now discuss the affirmative defenses to criminal and administrative liability set forth in Idaho Code § 18-614(1), (2), and (3). Plaintiffs point out that Idaho Code § 18-614(1) provides that no physician can be subjected to criminal or administrative liability for performing an abortion on a woman, when her age may be in question, if the physician obtains either positive identification or other documentary evidence from which a "reasonable person" would have concluded that the woman seeking the abortion was either an emancipated minor or was an adult. Plaintiffs argue that this provision, when applied in a criminal setting, creates confusion with the "knowingly" provision of the other sections.

While this statute is not a model of clarity, combining tort concepts of a "reasonable person" with traditional criminal scienter requirements of acting "knowingly," the Court does not find that this disparity is sufficient to render the statutory scheme vague and unenforceable. The state will have the burden of proving beyond a reasonable doubt that the physician "knowingly" violated the parental consent law, and in this context performing an abortion on a minor that he may have thought was an adult.

Even if a physician chooses not to raise the affirmative defense described in Section 18-614(1), the state would still have the burden of proving that the physician "knowingly" performed the abortion on the woman knowing that she was a minor. Aside from relying on a failure of proof by the state that he "knowingly" performed the abortion on a minor, the physician can also raise the affirmative defense that he had obtained identification or documentary proof of

her age. Since this section only comes into play when raised by the physician as an affirmative defense, it must be considered in a somewhat different context than when a state eliminates "knowingly" as a scienter element when it is proving its case in chief. Since this section is only applicable if the physician decides to raise it as an affirmative defense, the Court does not find that the "reasonable person" standard, which would be used to evaluate the merits of the affirmative defense, renders the statutory scheme unconstitutional.

Concerning Idaho Code § 18-614(2), the Court notes that this subsection provides a physician with a defense to prosecution for performing an abortion in violation of the parental notification procedures outlined in Idaho Code § 18-609A(1)(a)(v). Consistent with this Court's determination *supra*, that the whole of Idaho Code § 18-609A(1)(a)(v) is unconstitutional, § 18-614(2) is rendered moot.

The last affirmative defense is found in Idaho Code § 18-614(3), which Plaintiffs argue could result in physicians notifying the parents of adult women, against their wishes, that they had an emergency abortion. Specifically, Idaho Code § 18-614(3) provides a defense to prosecution if, following an emergency abortion, "the physician, after reasonable inquiry, is unable to determine whether or not the woman is a minor," and he proceeds to notify the patient's parent(s), regardless of the patient's age. As with Idaho Code § 18-614(2), this subsection is also rendered moot by the Court's determination that the parental notification procedures outlined in Idaho Code § 18-609A(1)(a)(v) are unconstitutional.

The Court further finds that Idaho's parental consent law does not raise any constitutional concerns as far as it relates to administrative penalties. The administrative penalties contained in Idaho Code § 18-605(2) do not require that the State of Idaho prove that a medical care provider

"knowingly" violated the provisions of the parental consent statute. While Defendants refer to it as an "objective" standard, Plaintiffs prefer to call it a "strict liability" standard. In any event, the question is whether the state can set a lower standard of proof for administrative penalties than would be constitutionally required for criminal penalties. The short answer is yes.

As the Seventh Circuit found in *Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999):

> [T]he threat of potential financial liability under the [statute's] forfeiture provision is, we believe, qualitatively no different from the threat of civil liability under the [statute]. Because we have already concluded that the threat of financial liability under the section cannot be said to increase a physician's unwillingness to perform emergency abortions because the physician already faces the threat of financial liability at tort law for decisions to perform emergency abortions that are later adjudged to be medically unreasonable, it follows that the imposition of a monetary fine is likely to have no significant chilling effect on the performance of abortions in Wisconsin.

*Id.* at 467.

Likewise, this Court finds no constitutional violation or chilling effect because Idaho's administrative penalties set a different and lower standard than would apply to criminal prosecutions.

## VII.

## SEVERABILITY OF INDIVIDUAL PROVISIONS OF THE STATUTE.

It is well settled that the question of severability of a state statute is one of state law. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506, 105 S. Ct. 2794, 2803, 86 L.Ed.2d 394 (1985); *Ripplinger v. Collings*, 868 F.2d 1043, 1056 (9th Cir. 1989). The Idaho Supreme Court has stated that "when the unconstitutional portion of a statute is not integral or indispensable, it will recognize and give effect to a severability clause." *Simpson v. Cenarrusa*, 130 Idaho 609,

614, 944 P.2d 1372, 1377 (1997). The Idaho Supreme Court has also considered whether the

elimination of the invalid or unconstitutional portion of a statute would render the remainder of

the statute incapable of accomplishing the legislative purposes. *See Boundary Backpackers v.*

*Boundary County*, 128 Idaho 371, 378, 913 P.2d 1141, 1148 (1996).

Defendants suggest that if any of the provisions of Idaho's parental consent law are

declared unconstitutional, the remaining portions of the consent law should not be rendered

incapable of accomplishing the legislative purposes. Defendants point out that the statute itself

provides for the severability of any one or more of the provisions. That provision reads:

> 18-615. Severability. If any one (1) or more provision,
> section, subsection, sentence, clause, phrase, or word of this
> chapter or the application thereof to any person or circumstance is
> found to be unconstitutional, the same is hereby declared to be
> severable and the balance of this chapter shall remain effective
> notwithstanding such unconstitutionality. The legislature hereby
> declares that it would have passed every section of this chapter and
> each provision, section, subsection, sentence, clause, phrase or
> word thereof irrespective of the fact that any one (1) or more
> provision, section, subsection, sentence, clause, phrase, or word be
> declared unconstitutional.

Idaho Code § 18-615. Based upon the express language of this severability clause, the

elimination of any invalid portion of a statute would not render the remainder of the statute

incapable of accomplishing the legislative purposes. Therefore, the sole issue to be decided is

whether the challenged portions of Idaho's parental consent statute are "integral or

indispensable." *Simpson v. Cenarrusa*, 130 Idaho 609, 614, 944 P.2d 1372, 1377 (1997). If they

are not "integral or indispensable," they may be severed from the remaining statute. *See id.*

As discussed *infra* in the Court's Order, the Court finds that the unconstitutional

provisions are not integral or indispensable to the other portions of Idaho's parental consent law

and thus they may be severed from the remaining statute.

## ORDER

Based upon the foregoing, the Court being fully advised in the premises, IT IS HEREBY

ORDERED that the following provisions of Idaho's parental consent law, Idaho Code § 18-601

*et seq.*, are permanently enjoined:

(1)     Idaho Code § 18-609A(1)(b)(i), the first sentence only, which states that a minor
seeking a waiver of the requirement of parental consent must file her judicial
bypass petition in "the county where the minor resides or the county where the
abortion is caused or performed";

(2)     Idaho Code § 18-609A(1)(c), which provides that if a district court denies a
minor's bypass petition, she must file a notice of appeal within two (2) days from
the date of issuance of the order. An appeal of a minor's bypass petition would
therefore be governed by Idaho Appellate Rule 14;

(3)     Idaho Code § 18-609A(1)(b)(iv), the final three sentences only, which require that
if a judge learns of criminal conduct while hearing a bypass petition, the judge
must report that activity to law enforcement;

(4)     The post-abortion parental notification procedures set forth in Idaho Code Section
18-609A(1)(a)(v). Consistent with this Court's determination that such
procedures are unconstitutional, the affirmative defenses outlined in Idaho Code §
18-614(2) and (3) are rendered moot.

Further, finding that the above-listed provisions are not integral or indispensable

to the other portions of Idaho's parental consent law and thus they may be severed from the

remaining statute, the Court will not permanently enjoin the whole of Idaho's parental consent

law.

DATED this **20** day of December, 2001.

_Mikel H. Williams_
MIKEL H. WILLIAMS
UNITED STATES MAGISTRATE JUDGE

## MAILING CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _____ day of _____, 2001, to the following:

B  NEWALL SQUYRES
HOLLAND & HART
P O  BOX 2527
BOISE  ID  83701

HELENE T  KRASNOFF
PLANNED PARENTHOOD
1120 CONNECTICUT AVE N W   STE 461
WASHINGTON  DC  20036

ROGER K  EVANS
DARA KLASSEL
EVE C GARTNER
PLANNED PARENTHOOD
810 SEVENTH AVE
NEW YORK  NY  10019

CLINTON E  MINOR
DAVID W  LLOYD
RICHARD A HEARN
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVN
P O  BOX 83720
BOISE  ID  83720-0010

WILLIAM T  SALI
PO BOX 71
KUNA, ID 83634

                                      Cameron S. Burke, Clerk
                                      United States District Court

                                      ___ _____ _____
                                        by Deputy Clerk