IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF IDAHO, and GLENN H. WEYRICH, M.D., | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.  CV 00-353-S-MHW |
| | ) ) | **ORDER** |
| | ) ) | |
| v. | ) ) | |
| LAWRENCE WASDEN, Attorney General of the State of Idaho; and GREG BOWER, Ada County Prosecuting Attorney, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**INTRODUCTION**

Currently before the Court for its consideration is a motion by the Plaintiffs, as prevailing parties, for an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.  The original motion was filed on July 25, 2005, and requested fees of $553,916.35 and $21,728.89 in costs. (Docket # 193.)  On October 6, 2005, the Defendants, after receiving an extension of time, filed their opposition, arguing that the amount of attorney fees sought was not reasonable and should be reduced to an award of $198,917.50.

**Order - page 1**

On November 7, 2005, the Plaintiffs filed a motion for leave to conduct limited discovery and a corresponding extension of time to file their reply to Defendants' response to their motion for fees and costs.  (Docket # 201.)  Plaintiffs asserted that the need for discovery arises out of the fact that the Defendants retained an outside law firm, Racine Olson Nye Budge & Bailey, and a member of that firm, attorney Richard Hearn, to act as a Special Deputy Attorneys General ("SDAG") to assist in the defense of the action.  Plaintiffs further assert that they believe that SDAG Hearn and others attorneys of that firm were paid in excess of what the Defendants now argue is the appropriate attorney fee to be awarded to Plaintiffs' counsel.  Plaintiffs stated that they became aware of this based on line item expenditures contained in the public record for the Attorney General's office for FY 2005 and FY 2006.  Plaintiffs argued that the limited discovery requested would be relevant because it would go to the question of what a reasonable award of attorneys fees to Plaintiffs' counsel would be, especially if Defendants paid their special counsel more than they are suggesting Plaintiffs' counsel be paid.

The Court granted the limited discovery requested by Plaintiffs and allowed an extension of time for Plaintiffs to file their reply brief.  It also allowed the Defendants to conduct a limited amount of discovery, and the filing a sur-reply brief. (Docket # 205.)

The additional briefing has now been received by the Court.  The Plaintiffs now request additional fees based on the limited discovery and in filing their reply memorandum in the sum of $21,207.50, less a 10% reduction for possible duplication of effort, for a final request of $19,086.75.  As the matter now stands, Plaintiffs request attorney fees and travel and other costs in the total sum of $594,731.99.

**Order - page 2**

## DISCUSSION

In a "federal civil rights action or proceeding, 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Jordan v. Multnomah County*, 815 F.2d 1258, 1261 (9th Cir. 1987); *quoting* 42 U.S.C. § 1988; *see also Schrader v. Idaho Dep't of Health and Welfare*, 631 F. Supp. 1426, 1428-29 (D. Idaho 1986) ("Title 42 U.S.C. § 1988 provides for a discretionary award of attorney's fees to the prevailing party in any action to enforce a provision of Section 1983."). Title 42, Section 1988 states:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

The Defendants do not dispute that the Plaintiffs are the prevailing parties in this case, nor do they argue that special circumstances render an award of fees unjust. The Defendants instead frame the issue as being whether the amount of attorney fees and costs requested is reasonable. In particular, the Defendants take issue with the total amount of time requested by the Plaintiffs and the assertion by Plaintiffs that several attorneys who worked on the case be compensated by the prevailing hourly rate for attorneys of similar skill and experience in New York City and Washington D.C., where their attorneys customarily practice.

A.    Legal Standard.

The first step in the calculation is for the district court to arrive at a "lodestar" figure by multiplying the reasonable number of hours counsel spent on the litigation by a reasonable hourly rate. *Hensley v. Echerhart,* 461 U.S. 424, 433, (1983); *Blum v. Stenson,* 465 U.S. 886, 888, (1984); *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1993) ("The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.").  If the applicant is seeking more than the lodestar amount, they have the "burden of showing that 'such an adjustment is necessary to the determination of a reasonable fee." *Blum,* 465 U.S. at 989.

In *Pennsylvania v. Delaware Valley,* 478 U.S. 546, 565 (1986), the United States Supreme Court recognized that the initial lodestar calculation actually "subsumed" many of the past bases for upward adjustments:

> Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors 'are subsumed within the initial calculation' of the lodestar, we specifically held in *Blum* that 'novelty [and] complexity of the issue,' 'the special skill and experience of counsel,' 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent basis for increasing the basic fee award.

While many of the *Johnson* factors are subsumed in the lodestar calculation, others are not.  The *Johnson* court posited twelve factors to be considered in calculating a reasonable attorneys' fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases.  *Johnson,*  488 F.2d at 717-19.

In this case, the Plaintiffs are not requesting an increase in the lodestar above reasonable attorneys fees.  The dispute of course is whether the total time requested by Plaintiffs' counsel is reasonable and the claimed hourly rate should be used.  Therefore, the Court will first discuss reasonable time and then reasonable attorney fees.

**B.     Reasonable number of hours.**

This case has had a long and tortuous past spanning six years.  It was fought all the way to the courthouse steps of the United States Supreme Court, where a petition for certiorari filed by the Defendants was denied.  Plaintiffs initially brought the action seeking declaratory and injunctive relief against enforcement of the parental consent statute adopted by the state of Idaho in 2000.  *See* 2000 Idaho Senate Bill No. 1299, amending Chapter 6, Title 18 of the Idaho Code to add new sections 18-609A and 18-614 and adopted by the Idaho Legislature in February, 2000 ("2000 Act").

Portions of the 2000 Act  were preliminarily enjoined by an Order of this Court on September 1, 2000.  In response to the pending lawsuit and the ruling on the preliminary injunction, the Idaho Legislature amended the law. *See* 2001 House Bill No. 340, amending Chapter 6, Title 18 of the Idaho Code, Sections 18-605, 18-609A and 18-614 and adopted by the Idaho Legislature in March, 2001 ("2001 Act").   While the 2001 Act altered some of Plaintiff's original claims, Plaintiffs continued to assert that the constitutional defects were not cured and filed an amended complaint and sought a new preliminary injunction.  The Court continued its injunction against one portion of the law and enjoined a new provision.

**Order - page 5**

On September 4 through 7, 2001, the Court conducted a trial which included expert witnesses called by both parties.  On December 20, 2001, the Court issued a 42 page decision which held that four of the statutory provisions were unconstitutional, that these restrictions were severable, and upheld the remaining provisions.  Both parties filed notices of appeal to the Ninth Circuit Court of Appeals.  The Plaintiffs filed a 34-page and a 58-page brief with the Ninth Circuit and the Defendants filed a 58-page and 61-page brief.

In a 38-page decision, a three judge panel ruled that the statutory scheme was unconstitutional because it did not contain an adequate medical emergency exception, that these provisions were not severable from the remaining statutory provisions, and therefore the entire statute was unconstitutional.  *Planned Parenthood of Idaho v. Wasden,* 376 F.3d 908 (9th Cir. 2004).  Defendants sought a rehearing and a rehearing *en banc.*  The three judge panel voted unanimously to deny the request for a rehearing, and no judge of the full Ninth Circuit requested a vote on whether or not to hear the case *en banc.*  The Defendants then petitioned for certiorari, which was denied on March 28, 2005.  *Wasden v. Planned Parenthood of Idaho,* 125 S.Ct. 1694 (2005).

As noted, this case was vigorously prosecuted and defended by each side.  When it comes time to decide whether the prevailing party requested attorney fees are reasonable, it is fair to look at how the case was defended.  As the Seventh Circuit has explained, "A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085, 1109 (7th Cir. 1990).

**Order - page 6**

With this backdrop, the Court will turn to the question of whether the total amount of time requested for attorney fees and costs is reasonable.  First, on a broad scale, the Defendants claim that the amount of time spent by the Plaintiffs counsel must be substantially reduced.  In support of their opposition to the requested fees, the state of Idaho engaged the services of Merlyn W. Clark, a long time and distinguished member of the Idaho Bar, to make an independent evaluation of the reasonableness and necessity of attorney fees and costs requested by Plaintiffs in this case.  A declaration setting forth his opinions has been filed with the Court. (Docket # 198-2)  On page 32 of this declaration, Mr. Clark opines that, "much of the time and labor on this case described by counsel for the Plaintiffs in their Declarations are duplicative, unreasonable, excessive and unnecessary.  It is my opinion that awarding attorney fees to the Plaintiffs in the amounts claimed would produce a windfall to Plaintiffs."

This case is somewhat unique in that it was not defended solely by attorneys from the Idaho Attorney General's Office.  As mentioned, Richard A. Hearn with the law firm of Racine Olson Budge & Bailey was retained as lead counsel in defending the case and was  appointed as a Special Deputy Attorney General .  Also several Deputy Attorney Generals worked on the case with Mr. Hearn, attending court hearings and the trial,  and it is safe to assume reviewing and preparing pleadings and memorandums submitted to the Court.

About the time the request for attorney fees by the Plaintiffs became the major focal point in this litigation, Plaintiffs learned that certain line items of expenditures in the Attorney General's budget contained specific amounts paid out in defense of this case.  This was the genesis of Plaintiffs' request to conduct limited discovery into what amounts time and money had been spent in defense of this case by the state of Idaho.  Plaintiffs' argument is not complex, it is

simply that 'if Defendants claim we are off the charts in the amount of time we spent on the case, lets see what they spent on their side.'   As mentioned earlier, the Court granted limited discovery into this area.

Initially, an affidavit was submitted by Marty Durand, who provided a schedule from the Office of the Attorney General setting forth the estimated personnel costs and operational expenses on matters relating to parental consent litigation.  (Docket # 211-4)  The parties later stipulated to withdraw this declaration and a stipulation was submitted which reflects that the State of Idaho paid the Racine Olson firm $202,300.66 for attorney fees, which the Court assumes includes merit and appellate fees.  It also lists six attorneys from the firm who worked on the case, including Mr. Hearn.  All of these attorney billed their time, beginning in 2000, at the rate of $125 per hour, with paralegals being billed at $45 per hour.  While the total number of hours devoted by the lawyers is not set forth, nor is there any division between the hours spent by attorneys as opposed to paralegals, dividing the amount of the billings submitted by this firm by the hourly rate equals approximately <u>1618.4</u> billable hours.

This can now be compared to the total amount of time that Plaintiffs contend was reasonably related to prosecuting the case and, because there is no indication that the Racine Olson firm charged some hourly rate for travel, the Court will focus on the hours submitted in Plaintiffs original application, deleting travel hours.  The Court will also not include at this juncture the 50.5 hours that Plaintiffs have requested for work connected with preparing the fee applications because there is no evidence the Racine Olson firm has been involved in that aspect of the case either.  (All opposition documents to the fee application have been generated by Deputy Attorneys High and Chou.)

**Order - page 8**

In trying to make an "apples to apples" comparison at this point, the Plaintiffs have asserted that 1649.4 attorney hours were reasonably spent in prosecuting their claims.  In addition, Plaintiffs have voluntarily agree to reduce this amount by an additional 10% to account for any duplication of effort among the several attorneys working on the case,  for a total of 1484.5 hours.  The Defendants' law firm spent 1,618.4 hours in defending the claims, so the amount of time being requested by Plaintiffs is actually 133.9 hours less than that of the Defendants.  Of course, this does not account for *any* hours spent by the staff attorneys working for the Idaho Attorney Generals' Office and in addition, the Court is reasonably confident that the Racine Olson firm would not take the position that their billings to the State of Idaho were *un*reasonable.

Looking at it a slightly different manner, the Court has examined the declaration of Mr. Clark as to the amount of time he believes would be reasonable in this case for each of the Plaintiffs' counsel.  Again attorney travel time claimed by Plaintiffs will not be considered at this juncture.  Mr. Clark breaks the hours down per attorney as follows:

| Attorney | | Hours |
|---|---|---|
| Krasnoff | | 1079.5 |
| Evans | | 84.75 |
| Klassel | | 78 |
| Squyres | | 115.1 |
| Holland Associates | | 51.3 |
| Friedman | | 13.25 |
| | Total | 1421.90 |

Looking at it from this angle, 62.6 hours separate Mr. Clark's figure of 1421.90 from the 1484.5 hours claimed by Plaintiffs.  While the Court will not find this amount *de minimus*,, it is hard to reconcile with the Racine Olson total hours of 1618.4,  since more than 196.5 hours

separate Mr. Clark's estimate of what Plaintiffs should have devoted to the case and the amount of time spent by the Defendants, again not considering any contributions of time made by the Attorney General's Office.

Should the Plaintiffs be awarded the additional 62.6 hours that now separate them from Defendants analysis?  The Court finds that their requested fees should not be further reduced. Mr. Clark states that Mr. Squyres hours should be reduced by 22.8 hours because he did not keep meticulous records of how these hours were allotted to specific tasks.  In response, Mr. Squyres in paragraphs 19 and 20 of his declaration provides justification for the work he was doing on the case.  (Dkt # 211-11)  Admittedly the detail could be better, but the Court is satisfied that the time was devoted to specific legal tasks.  Also Mr. Squyres states that he did not include any fees for the months of October, November, and December of 2005, even though he was working on the case.

Defendants argued there should be various reductions in hours for certain legal tasks performed by Ms. Krasnoff, such as reducing the time in preparing an amended complaint from 19.5 to 10 hours.  In response, Ms. Krasnoff has filed a declaration addressing certain of these points.  (Docket # 211-5)  As to the 10 hour reduction in the time for preparing the amended complaint, Ms. Krasnoff points out that there were actually two different versions of the amended complaint because the Idaho Legislature changed the law.  Ms. Krasnoff also rebuts the argument that the time spent discussing the case with immigration experts was not useful to the case.  The Court agrees that this expenditure of time was necessary to a proper preparation since one of the primary claims was that the statute would have an adverse impact on non-citizens.  On

**Order - page 10**

whole, and considering the 10% reduction in Ms. Krasnoff's total time, the Court does not find a further reduction is warranted.

Defendants argue that Mr. Evans' time should also be reduced. Without going through each specific matter, the Court will focus on the argument that Mr. Evans should not have attended the hearing on the TRO since other counsel for the Plaintiffs were also present. In his declaration, Mr. Evans responds that Defendants sent two attorneys to the TRO hearing, therefore it was not "unnecessary and duplicative" for the Plaintiffs to have equal representation at an important hearing. (Docket # 211-6) The Court agrees and will not reduce fees, in particular the 4.75 hours for that hearing, over and above the 10% reduction already taken by Mr. Evans.

Defendants also object in part to the hours claimed by Mr. Friedman and Ms. Kassel. The Court has reviewed the objections and Mr. Friedman's supplemental declaration (Docket # 211-7) and finds that the amount of fees to prepare the fee application should not be reduced since the time spent was reasonably necessary in preparing the submissions. In addition, there is already a 10% reduction that Plaintiffs' counsel voluntary took to account for any duplication. Ms. Kassel has already taken a 10% reduction, which leaves about 10 hours in dispute between Mr. Clark and herself. The Court does not find these additional 10 hours to be unnecessary or duplicative of other work done by Plaintiffs' other attorneys.

Going back to the comparison of the number of hours each side has devoted to this case, the Defendants have strenuously argued that what they have spent in defending this action at the trial level and prosecuting their appeals is totally immaterial and irrelevant to what would be reasonable when looking at from Plaintiffs' perspective. The Court disagrees to a large extent

Order - page 11

with the Defendants' position.  For the most part litigation is a two-way street, what is generated on one side of the street normally requires a response from the other side.  Each side spends the same amount of time in trial and at hearings.  And being intimately familiar with the efforts each side put into their legal research and memorandums, the Court can not find that the Plaintiffs put in far less effort and prepared lower quality  submissions when compared to the legal work done by the Defendants.  This case was extremely well prosecuted and defended by competent counsel on each side of the isle.

While some might argue that the analysis could have ended by simply comparing the time of the Defendants' private law firm with the amount claimed by Plaintiffs,  the Court has previously reviewed the objections made by the Defendants as to the hours claimed by the Plaintiffs on an attorney by attorney basis, and that analysis will stand.  However, certain hours will be disallowed by the Court.

The Court will not compensate the Plaintiffs at any hourly rate for travel.  Plaintiffs have failed to provide specific information about what they were doing during the 111.5 hours they were in planes or airports or hotel rooms in connection with this case.  In addition, such costs are not normally awarded by this Court.  Plaintiffs cite one case from the Ninth Circuit in support of their request for attorney hourly travel time, *Harris v. Marhoefer,* 24 F.3d 16 (9th Cir. 1994). This case does not stand for the proposition that attorneys are entitled to recover for travel time in planes, etc., only that they can recover *out-of-pocket* expenses that would normally be billed to paying clients, such as meals, hotel rooms and airplane tickets.  Finally, absent from the declarations of Sims, Hut, and Parker submitted by the Plaintiffs are any assertions that they

customarily bill their regular clients hourly rates in the neighborhood $435 to $625 per hour while traveling. (Docket # # 193-4, 193-5, 211-3).

The Plaintiffs have requested costs associated with this case, which includes airplane tickets, meals, hotel expenses and copying expenses.  There appears to be no specific objection by the Defendants as to any of these hard costs, therefore the Court will award costs in the sum of $21,728.89.

  **C.** **Prevailing market rate.**

Defendants argue that the Lodestar should be based on hourly rates typically charged by Idaho attorneys, as opposed to rates that would apply in New York City or Washington D.C., where several of Plaintiffs' attorneys reside.  Defendants argue that  Plaintiffs' memorandum is incorrect when it suggests that the "relevant community" is where outside counsel practices. Plaintiffs' Memo in Support of Attorney Fees, ¶. 13-14.   Defendants state the general rule recognizes that the attorney fee rate is based on the forum of the case—not where counsel resides.

Reasonable fees under § 1988 are calculated according to the prevailing market rates in the relevant legal community, *Blum*, 465 U.S. at 895.  *Sorenson v. Mink,* 239 F.3d 1140, 1145 (9th Cir. 2001) ("Under § 1988, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is presented by private or nonprofit counsel.").   However, the Ninth Circuit has held that rates from outside of the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lacked the degree of experience, expertise or specialization required to handle properly the case." *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992)  In *Gates,*

Order - page 13

the Ninth Circuit approved the award of San Francisco rates in a case tried in Sacramento because the expertise required in a complex institutional reform litigation was not available in the Sacramento area.

There is a blend of attorneys representing the Plaintiffs, some from the forum state and others from outside of the District of Idaho.  Mr. Squyres, and associates from Holland and Hart who worked on the case, are requesting the prevailing forum market rate for the District of Idaho.  As to the others, Plaintiffs are requesting $350 an hour for Ms. Krasnoff, who works for Planned Parenthood Federation of America in Washington, D.C.; $475 an hour for Ms. Kassel and Mr. Evans,  who both work for Planned  Parenthood Federation of America in New York City; and $400 an hour for Mr. Friedman who worked on the fee petition and who has a private practice in New York City.  Defendants take some issue with Mr. Squyres and Holland and Hart associates' local rates, but the primary focus is on out-of-state counsel, who they contend should be paid as follows; Mr. Evans, Klassel, Friedman at $200 per hour and Ms. Krasnoff at $125 an hour.

In support of their position, Defendants have submitted the declaration of Mr. Clark who states that he contacted several well respected attorneys who have done substantial *pro bono* work in Idaho, and they have acknowledged that they would have been willing to take this case. (Docket # 198-2)  In response, Mr. Squyres contacted in the same attorneys and in his declaration he states that after explaining to them the protracted history of this case, that it involved a challenge to the constitutionality of a parental consent statute; that they expressed reservations about whether or not they would have actually agreed to represent the Plaintiffs.

Order - page 14

Of course it is always difficult in hindsight to determine if an attorney would or would not have taken a case.

Based on Supreme Court and Ninth Circuit precedent, the Court makes the following findings.  First, constitutional challenges to statutes dealing with abortion issues is a complex area of the law and a certain level of expertise is necessary in effectively prosecuting a case. Since almost all of these cases are eventually determined at the appellate level, not only must the attorneys effectively present and argue pretrial motions, but issues presented at the trial level must be adequately framed for appellate review.  This case dealt with complex issues of how the term "medical emergency" must be statutorily defined which necessitated the presentation of expert testimony.  Having experienced counsel who specialize in this area can actually reduce, in some instances, the amount of time necessary to research and brief complex constitutional arguments to the court.

With that said, it does not necessarily mean that every lawyer who is involved in some aspect of the case has to have this particular degree of legal specialization.  Recognizing the practical importance of having some senior attorneys bringing their specialized knowledge to bear on the case, other work in the case can be done by a new associate who does not possess the knowledge and experience of more specialized senior practitioners.  This is no different than a members of a large law firm, where senior litigation attorneys serve as mentors and assist junior associates by serving as a sounding board for their legal theories, reviewing their memorandums and serving as a mentor in helping them prepare for trial.  It also does not mean that every aspect of a case has to be handled by an attorney with a great deal of specialization in cases involving abortion related issues.  Nor does it mean that an attorney just two years out of law school who is

**Order - page 15**

hired by  Planned Parenthood as an in-house attorney has any greater knowledge in this area than an associate with similar experience at the Holland and Hart law firm in Boise, Idaho.  Both would have to educate themselves as to the nuisances of the law in this area and receive guidance and mentoring from attorneys who have for years specialized in this field of law.

Secondly, the Court will not apply historic hourly rates to the work performed by Plaintiffs counsel; however it is the Court's understanding that the request for attorney fees by Mr. Squyres and the Holland and Hart associates were at the prevailing rate at the time the work was done.  Unlike the private law firm retained by the State of Idaho, the attorneys in this case have had to wait up to six years to receive any compensation for the work they have done.  In the meantime, they have had to honor all of their business obligations of maintaining a practice and all of the resultant overhead expenses.  The value of a dollar received in 2000 is not the same value of a dollar received in 2006.  This view is well supported by Supreme Court and Ninth Circuit case law.  *See Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 283-84 (1989) (compensation received several years after services rendered--as it frequently is in complex civil rights litigation--is not equivalent to the same dollar promptly received after legal services are performed) *Gates v. Deukmejian,* 987 F.2d 1392, 1406 (9th Cir. 1993) (district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds.)

With these guidelines, the Court will now determine the appropriate hourly rate for the Plaintiffs' counsel.

**1.      Newell  Squyres and Holland and Hart Associates.**

The Court has already determined that the number of hours claimed by this group of attorneys is reasonable when the 10% reduction in overall hours is taken into consideration. The Court has also consider the hourly rates requested by these attorneys and finds, and as basically confirmed by Mr. Clark in his declaration, that they fall within the prevailing hourly rate for work performed by attorneys of similar experience in this forum.

### 2.    Ms. Krasnoff.

The Court has already determined that the number of hours claimed by Ms. Krasnoff would be reasonable when the 10% reduction in overall hours is taken into consideration. The Court will however limited her hourly rate to $200 per hour. Ms. Krasnoff graduated from law school in 1997-98, started her employment with Planned Parenthood in 2000, and this was her first major case. As set forth in the declarations of Mr. Evans and Ms. Klassel, she worked under their direction and they supervised her activities. The Court does not find she had any more special skill or expertise than would a comparably situated new associate at Holland and Hart in Boise, Idaho. In fact, the associates at Holland Hart claim a total of 76.2 hours for the work they did on this case, and the Court finds that they were just as capable as Ms. Krasnoff in performing similar work in this case. This is with the caveat that any associate at Holland and Hart would have the benefit of Mr. Evans' and Ms. Klassel's expertise.

### 3.    Mr. Evans and Ms. Klassel for Merit and Appellate Services.

The Court has already determined that the amount of time they have claimed is reasonable when the 10% reduction for overall hours is taken into consideration. The Court finds that they should be compensated at the rate of $375 per hour. While the Plaintiffs have submitted declarations Mr. Sims and Ms. Parker in support of their request to be compensated

at $475 per hour, based on what attorneys in large law firms in New York City and Washington D.C. would earn, the Court is also guided by the hourly rate requested by Mr. Squyres of $275 an hour.  Giving these two attorney credit for their high level of expertise in this area of the law, the Court finds that awarding them $200 more per hour than an extremely well qualified local attorney, who has also developed considerable expertise in this area of law, is not warranted. Therefore, their hourly rate will be reduced to $375 per hour.

### 4. Mr. Squyres, Mr. Evans and Mr. Friedman for Fee Application.

The Court finds that the number of hours devoted to preparing the request for attorney fees is reasonable.  However, the Court does not find that this type of legal work requires any specialized knowledge of the law.  Preparing a fee application involves gathering billing information, conducting legal research of case law under § 1988 and drafting the fee request. This is work routinely done by prevailing parties and does not involve any complex constitutional determinations.  The Court's conclusion that this is the type of work that can be performed by competent local counsel is confirmed by the fact that, as local counsel, Mr. Squyres was the attorney primarily responsible for preparing the opposition to Mr. Clark's declaration with his own  17 page declaration with attachments.  (Docket # 211-10)   When these factors are considered, the Court will approve an hourly rate of $275 per hour for all three counsel.

\ \ \

\ \ \

\ \ \

Order - page 18

## SUMMARY

Based on the foregoing, the Court's ruling on the application for fees and costs would be

as follows, and where appropriate accounting for the 10% reduction in hours:

**Attorney Fees:**

| | | | |
|---|---|---|---|
| 1. Newell Squyres and Associates (10 % reduction) | $145-$275 | 191.52 | $38,264.85 |
| 2. Newell Squyres (Supp. Fee App.) (10% reduction) | $275 | 13.70 | $3,767.50 |
| 3. Krasnoff (10% reduction) | $ 200 | 1094.17 | $218,834.00 |
| 4. Krasnoff (Original Fee App.) | $200 | 26.25 | $5,250.00 |
| 5. Evans (10% reduction) | $375 | 108.67 | $40,751.25 |
| 6. Evans (Suppl. Fee App.) (10% reduction) | $275 | 19.80 | $5,445.00 |
| 7. Friedman (Original Fee App.) | $275 | 24.25 | $6,668.75 |
| 8. Friedman (Suppl. Fee App.) (10% reduction) | $275 | 21.92 | $6,028.00 |
| 9. Klassel (10 % reduction) | $375 | 90.1 | $33,787.50 |
| | | Subtotal: | $358,796.85 |

**Costs:**

| | | |
|---|---|---|
| 1. PPFA | | $17,117.49 |
| 2. Holland and Hart | | $4,611.40 |
| | Subtotal: | $21,728.89 |
| | **Total:** | **$380,525.74** |

\\\

\\\

\\\

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** Plaintiffs' request for attorney fees and costs (Docket # 193-1), filed July 25, 2005, in the total sum of $594,731.99 will be **DENIED.**  Instead, attorney fees and costs in the sum of **$380,525.74** will be **GRANTED.**



DATED: **March 31, 2006**

Honorable Mikel H. Williams
United States Magistrate Judge